James W. FELT, Plaintiff,

v.

ATCHISON, TOPEKA & SANTA FE RAILWAY CO., Defendant.

No. CV 92–4217 LGB.

United States District Court, C.D. California.

Aug. 18, 1993.

Lawrence Silver and Mark E. Field of "Lawrence Silver," a law Corporation, Los Angeles, CA, for plaintiff James W. Felt.

William M. Bitting, Ronald W. Novotny of "Hill, Farrer & Burrill," Los Angeles, CA, for defendant Atchison, Topeka & Santa Fe Ry. Co.

## ORDER

BAIRD, District Judge.

Pending before the Court are Defendant's motion to dismiss for lack of subject matter jurisdiction, Defendant's motion for summary judgment, and Plaintiff's motion for partial summary judgment.

After considering the papers filed by the parties and all other relevant materials in the record, the Court hereby issues the following Order:

## I. DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A. The Railway Labor Act

A short synopsis of the factual background of this matter provides a useful context for consideration of the pending motion.[1]

Plaintiff James Felt filed suit against Defendant, his former employer, in July, 1992, alleging religious discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. Plaintiff alleges that Defendant violated the provisions of the Act by not respecting Plaintiff's religious beliefs; as a Seventh Day Adventist, Plaintiff may not work on Saturdays.

Plaintiff was a clerical employee of Defendant from 1971 until 1983, when he was laid off as part of a reduction in force. Still, under the terms of the relevant agreement between Defendant and Plaintiff's union (the "BRAC"—the Brotherhood of Railway, Airline, and Steamship Clerks), Plaintiff was entitled to receive protective pay during the period in which he was laid off and, possibly, severance pay.

However, in order to maintain his eligibility for protected status, Plaintiff had to fulfill certain requirements, such as bidding for temporary work assignments as they became available.

One such temporary assignment became available in or around May, 1984, when another employee, Diane Landis, was placed on disability leave. Landis's slot required work on Saturdays. Plaintiff was first in line to bid for the Landis slot and, as such bidding is mandatory lest an employee lose his protected status, Plaintiff bid for the slot. However, some sort of arrangement transpired whereby Plaintiff worked Monday through Friday, and another employee filled the Landis Saturday shift. Plaintiff would, in turn, work this employee's extra weekday shift. The parties dispute whether there was in fact an actual arrangement worked out between them regarding this slot, and if so, its ramifications.[2]

This temporary "arrangement" continued until early 1985, when, for reasons which are in dispute, Defendant put the Landis slot up for permanent bidding. Plaintiff was allegedly constrained by his religious beliefs from bidding on this permanent position, and did not bid on it.

Although it was allegedly Plaintiff's understanding that, despite his refusal to bid, he could retain his protected status with Defendant, when Plaintiff declined to bid on the permanent slot Defendant denied him continued protected status, in alleged conformance with the relevant collective bargaining agreement (CBA). As a result, Defendant also denied Plaintiff continued protective pay. Furthermore, when Defendant closed its Los Angeles office in 1987, Defendant denied Plaintiff severance pay.

Plaintiff's Complaint thus alleges that Defendant is liable to Plaintiff for lost protective and severance pay, and for lost benefits, as per the terms of the CBA. The gravamen of Plaintiff's claim (and the proper interpretation of Plaintiff's claim is disputed by the parties) is that Plaintiff was denied these

---

1. While the parties dispute many of the underlying facts and their legal significance, the basic outline of this matter provided in this Order should not engender serious conflict.

2. The religious belief of Seventh Day Adventists is that working on Saturday is a sin, and that it is also a sin to induce another to work on Saturday.

benefits as a result of Defendant's religious discrimination.

Defendant has argued that Plaintiff's lawsuit must be dismissed for lack of subject matter jurisdiction on the grounds that it is "preempted" by the Railway Labor Act (the "RLA"), 45 U.S.C. § 151 *et seq.* Defendant argues that because the instant dispute arises out of and requires interpretation of the parties' employment agreement, case law interpreting the RLA dictates that Plaintiff's claim must be considered under the mandatory grievance resolution provisions of the RLA.

■ It is certainly correct that the RLA has a broad, preemptive effect. *See, e.g., Brotherhood of Locomotive Engrs. v. Louisville & Nashville Ry. Co.,* 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). Courts have found that the RLA preempts, for instance, state law claims for physical handicap discrimination; *see O'Brien v. Conrail,* 972 F.2d 1, 3–4 (1st Cir.1992). Still, "preemption" is not the proper concept to be applied here.

■ Preemption doctrine derives from the Supremacy Clause of the U.S. Constitution and concerns the primacy of federal laws over competing or related state laws. As Defendant's motion concerns the interrelationship of two *federal laws*—the RLA and Title VII of the Civil Rights Act—preemption doctrine *per se* does not apply. Rather, the correct concern is whether the RLA provides the exclusive method of redress for Plaintiff's claims.

■ The RLA establishes a classification of "major" and "minor" disputes.[3] "[M]ajor disputes seek to create contractual rights, minor disputes to enforce them." *Consol. Rail Corp. v. Railway Labor Execs.,* 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989).

Additionally, minor disputes are defined as those that "concern[ ] a grievance regarding the interpretation or application of an existing [collective bargaining] agreement." *Ryan v. BRAC,* 141 L.R.R.M. 2361, 1992 WL 363763 (N.D. Ohio 1992). Courts have regularly found that minor disputes are subject to compulsory, binding arbitration under the RLA before the National Railroad Adjustment Board ("NRAB") where they involve the interpretation of the terms and obligations of the collective bargaining agreement. *Id.*

Moreover,

... the line drawn [between major and minor disputes] ... looks to whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action. The distinguishing feature of [a minor dispute is that it] may be conclusively resolved by interpreting the existing agreement.

....

Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement.

*Consol. Rail Corp.,* 491 U.S. at 305, 307, 109 S.Ct. at 2481, 2482.

Defendant argues that resolution of Plaintiff's claim of entitlement to protective pay and severance pay will necessarily involve reference to and interpretation of the CBA. Further, Defendant points out correctly that the BRAC agreement at issue here contains a nondiscrimination-on-the-basis-of-religion clause.

Moreover, Defendant's defense to the underlying charge of religious discrimination is that it had "a contractual right to take the contested action," and that this "action [was] arguably justified by the terms of the parties' collective bargaining agreement." *Consol. Rail Corp.,* 491 U.S. at 305, 307, 109 S.Ct. at 2481, 2482.

Specifically, Defendant contends that its actions with respect to Plaintiff's employment were justified under the terms of the CBA. Defendant contends that it was entitled to deny Plaintiff protective and severance pay because Plaintiff did not comply with the terms of the CBA, and that Defendant did not violate the CBA's prohibition on

---

**3.** The terms "major" and "minor" do *not* refer to the gravity or importance of the disputes.

religious discrimination when it put the Landis slot up for permanent bidding. Defendant thus contends that the instant matter is properly considered a minor dispute subject to the exclusive dispute resolution provisions of the RLA.

The Supreme Court's recent decision in *Gilmer v. Interstate/Johnson Lane. Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), provides the key underpinning for Defendant's motion to dismiss for lack of subject matter jurisdiction. In *Gilmer,* the Court held that a securities industry employee's claim brought under the Age Discrimination in Employment Act ("ADEA") was subject to binding arbitration, pursuant to the terms of an employment agreement. *Gilmer* stands for the proposition that statutory civil rights claims may be subject to binding arbitration.

Following *Gilmer,* the Fifth Circuit found in *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229 (5th Cir.1991), that *Gilmer* mandated a conclusion that a securities industry employee's Title VII sex discrimination claim was likewise subject to binding arbitration under the FAA. The *Alford* court noted that "[a]ny broad public policy arguments against [subjecting civil rights claims to binding arbitration] were necessarily rejected by *Gilmer." Id.* at 230.

Additionally, the court in *Newton v. Southern Pac. Trans. Co.,* 141 LRRM 2477, 1992 WL 350245 (W.D.Tx 1992), again citing *Gilmer,* decided the precise issue presented by Defendant's motion here, and held that a Plaintiff's claim for racial discrimination under Title VII was subject to the mandatory arbitration provisions of the RLA. The *Newton* court advanced its view that the mandatory arbitration provisions of the RLA were more stringent than those in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*

In Opposition, Plaintiff has relied principally on the Supreme Court's decision in *Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987).[4] In *Buell,* Plaintiff had sued the employer-railroad for personal injuries which allegedly occurred on the job;[5] Plaintiff sued under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*

The Supreme Court characterized FELA as providing broad remedies for injured workers, and held:

> The fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring an FELA action for damages. Presumably a host of personal injuries suffered by railroad employees are caused by negligent practices and conditions that might have been cured or avoided by the timely invocation of the grievance machinery....
>
> ... the theory running through [the Court's cases allowing employees to sue under federal statutes despite seemingly exclusive arbitration provisions] is that notwithstanding the strong policies encouraging arbitration, "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." [citation omitted].

This principle is instructive on the question before us. The FELA not only provides railroad workers with substantive protection against negligent conduct that is independent of the employer's obligations under its collective-bargaining agreement, but also afford injured workers a remedy suited to their needs, unlike the limited relief that seems to be available through the Adjustment Board.[6] It is inconceiva-

---

4. Plaintiff also cites the Ninth Circuit's opinion in *Buell v. Atchison, Topeka & Santa Fe Ry. Co.,* 771 F.2d 1320 (9th Cir.1985). However, the Supreme Court's treatment of the issues in *Buell* is authoritative.

5. While a key issue in *Buell* concerned whether Plaintiff had sued for personal or emotional injuries, this distinction is not relevant here.

6. At this point in its opinion, the Supreme Court included a footnote which discussed the limited remedies available under the RLA, such as back pay and reinstatement. However, it is significant to note that these are essentially the remedies which Plaintiff has sought in his complaint.

Specifically, the damages sought in Plaintiff's complaint consist of lost pay, benefits, and se-

ble that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might be able to process a narrow labor grievance under the RLA to a successful conclusion.

480 U.S. at 564–565, 107 S.Ct. at 1415.

Therefore, the central and novel question of law which this court must grapple with is the following—how can the language in *Buell* regarding the nonarbitrability of federal statutory claims be reconciled with the finding in *Gilmer* that civil rights claims may be subject to binding arbitration? In answering this question, the Court will first turn to Plaintiff's proffered methods of reconciling these two decisions.

First, Plaintiff has suggested that *Gilmer* and its progeny may be distinguished from the instant matter on the grounds that they were dependent upon the FAA. Plaintiff is correct that central to the *Gilmer* Court's holding was the finding that the employment agreement at issue there fell under the purview of the FAA.[7] This argument is not compelling, however, for two related reasons. First, *Gilmer* clearly held that Title VII claims are not *per se* nonarbitrable. Second, as the RLA likewise states the plain congressional preference for the resolution of disputes through arbitration, there is no principled reason for finding the pro-arbitration policy announced in the FAA to be more compelling than the pro-arbitration policy set forth in the RLA.

Next, Plaintiff argues that the FAA may be distinguished from the RLA in the instant matter in that the FAA is invoked pursuant to a written agreement between parties, whereas Defendant here seeks to invoke the RLA's statutory charge for arbitration. The Court likewise does not find this argument to be compelling, as the RLA *must* apply here because the underlying contract was one for railway employment.

Finally, Plaintiff argues that consideration of the instant matter will not involve analysis of matters within the scope of the CBA, and thus should not be considered arbitrable under the statutory language of the RLA. However, the essence of Defendant's defense in this lawsuit is that it was empowered—and arguably required—by the rules and regulations of the CBA itself to deny Plaintiff benefits.

Furthermore, the Court notes that the Supreme Court's opinion in *Gilmer* has limited the extent to which an earlier trilogy of Supreme Court cases concerning the arbitrability of statutory claims may be utilized to support a finding of subject matter jurisdiction in this matter. *See Gilmer*, 500 U.S. at ——, 111 S.Ct. at 1656, discussing *Alexander v. Gardner Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984).

Finally, the Court notes that, under *TWA v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) and its progeny, if Defendant is correct that its actions in the instant matter were pursuant to the CBA, Defendant may have a solid defense to Plaintiff's claim for religious discrimination.

Therefore, although the authorities do not provide this Court with explicit guidance, and although this case appears to present an issue of first impression, the Court concludes that the precedents discussed *supra* mandate a finding that Plaintiff's claim is subject to arbitration under the CBA. In the Court's view, such a conclusion is the logical result of the Supreme Court's *Gilmer* decision, and is not inconsistent with the principles which motivated *Buell*.[8]

---

niority rights; reinstatement; prejudgment interest; attorneys' fees; and, costs of suit.

With the exception of Plaintiff's prayer for fees and costs, Plaintiff does not appear to have sought damages under Title VII which would not be potentially available under the RLA and the underlying CBA. The fact that Plaintiff's prayer for relief seeks attorneys' fees and costs should

not provide a proper grounds for analogizing the instant matter to *Buell*.

7. Moreover, railway agreements are specifically *exempted* from the coverage of the FAA.

8. The Court emphasizes that the Plaintiff here, unlike the Plaintiff in *Buell*, seeks to recover CBA-guaranteed remedies (protective pay and

As it is undisputed that Plaintiff did not file a grievance under the BRAC agreement between the parties, Defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED, and Plaintiff's suit is ORDERED DISMISSED for lack of subject matter jurisdiction.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

As the Court finds that it lacks subject matter jurisdiction to hear the instant lawsuit, it declines to reach Defendant's and Plaintiff's summary judgment motions.

### ORDER OF DISMISSAL

ACCORDINGLY, it is hereby ORDERED that Plaintiff's complaint be DISMISSED for lack of subject matter jurisdiction.

IT IS SO ORDERED.

severance pay). By contrast, the Plaintiff in *Buell* sought statutory, FELA personal injury remedies.