James W. FELT, Plaintiff–Appellant,

v.

ATCHISON, TOPEKA & SANTA FE RAILWAY CO., Defendant–Appellee.

No. 93–56265.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1995.

Decided July 25, 1995.

Lawrence Silver and Mark E. Field, Los Angeles, CA, for plaintiff-appellant.

Ronald W. Novotny and James A. Bowles, Hill, Farrer & Burrill, Los Angeles, CA, for defendant-appellee.

James R. Neely, Jr., Deputy General Counsel; Gwendolyn Young Reams, Associate General Counsel; Carolyn L. Wheeler, Asst. General Counsel; Dori K. Bernstein, E.E.O.C., Washington, DC, as amicus curiae for plaintiff-appellant.

Lee Boothby, Walter E. Carson, Washington, DC and Mitchell A. Tyner, Silver Springs, MD, for Religious Freedom and General Conference of Seventh–Day Adventists as amici curiae for plaintiff-appellant.

Before: SCHROEDER and KLEINFELD, Circuit Judges, and KING *, District Judge.

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

SCHROEDER, Circuit Judge:

■ This case requires us to reconcile the mandatory arbitration mechanism of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq., and the statutory protections provided by Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq. The issue of first impression is whether a Title VII claim of employment discrimination is a "minor dispute" under the RLA and therefore subject to mandatory arbitration.

Plaintiff-appellant James W. Felt brought a Title VII suit against defendant-appellee Atchison, Topeka & Santa Fe Railway Co., alleging that the railroad failed to accommodate his religious preferences and seeking lost pay and benefits as provided for by terms of a collective bargaining agreement ("CBA"). In a published decision, the district court granted the defendant's motion to dismiss because it ruled Felt's claim constituted a "minor dispute" within the meaning of the RLA. See Felt v. Atchison, T. & S.F.R. Co., 831 F.Supp. 780, 783–85 (C.D.Cal. 1993). Controlling Supreme Court authority teaches that the dispute at issue is not a "minor dispute," involving as it does rights that exist independently of the CBA, and so we reverse. See Hawaiian Airlines, Inc. v. Norris, —— U.S. ——, ——, 114 S.Ct. 2239, 2247, 129 L.Ed.2d 203 (1994) (Hawaiian Airlines).

## BACKGROUND

Felt worked as a railroad clerical employee for the Atchison Topeka from 1971 until 1983, when he was laid off as part of a reduction in force. Under the terms of the CBA between Felt's union, the Brotherhood of Railway, Airline and Steamship Clerks, and the Atchison Topeka, Felt was entitled to receive protective pay during periods he was without employment, and, under certain conditions, severance pay. Eligibility for protective pay hinged on his willingness to bid for temporary assignments as they became available.

In or around May 1984, another clerical employee, Diane Landis, was placed on disability leave, and a temporary slot became available. Her position required work on Saturdays. Felt, a Seventh Day Adventist, is forbidden by his religious tenets from working on Saturday. However, because Felt was first in line to bid for the Landis slot, and because failure to bid would have meant loss of his protected status and guaranteed salary and benefits associated with such status, Felt bid for the position. An arrangement was apparently worked out pursuant to which other employees volunteered to work his Saturday shift, and Felt, in turn, would work an extra weekday shift.

This temporary arrangement continued until early 1985, when the Landis slot was posted for permanent bidding. Felt did not bid on the position, believing that his refusal to do so would not result in the forfeiture of his protected status. When Felt failed to bid, however, Atchison Topeka denied him continued protected status. As a result, the defendant discontinued his protective pay, and when the railroad closed its Los Angeles office in 1987, denied him severance pay as well.

Felt filed his Title VII complaint in district court on July 16, 1992, claiming that the railroad had failed to accommodate his religious preferences. He sought lost protective and severance pay, and other lost benefits, in the amounts established pursuant to the CBA. On August 18, 1993, the district court granted defendant's motion to dismiss for lack of subject matter jurisdiction. The district court concluded that the claim constituted a "minor dispute" over which the National Railroad Adjustment Board had exclusive jurisdiction. See Felt, 831 F.Supp. at 784–85.

## DISCUSSION

■ The district court's conclusion that it lacked subject matter jurisdiction is an issue of law that we review de novo. See, e.g., Carpenter v. Department of Transp., 13 F.3d 313, 314 (9th Cir.1994). Preliminarily, we address the defendant's contention that the RLA preempts other federal statutory remedies. As the district court correctly observed, "[p]reemption doctrine derives from the Supremacy Clause of the Constitution and concerns the primacy of federal laws. As defendant's motion [to dismiss for lack of subject matter jurisdiction] concerns the in-

terrelationship of two federal laws ... preemption doctrine *per se* does not apply." *Felt*, 831 F.Supp. at 782 (emphasis original); *cf. Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985) (discussing congressional power to preempt state law). The issue here is whether Congress intended the RLA's mandatory arbitration mechanism to preclude an independent action under Title VII. *Cf. Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 562, 107 S.Ct. 1410, 1413–14, 94 L.Ed.2d 563 (1987) (rejecting contention that RLA precluded a cause of action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 52–60). The inquiry is similar to preemption analysis, however, because both preemption of state law and preclusion of federal statutory remedies are questions of congressional intent.

█ Congress's purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. *See Buell*, 480 U.S. at 562, 107 S.Ct. at 1413–14 (1987). To realize this goal, the RLA establishes a mandatory arbitral mechanism for "minor" disputes. *See* 45 U.S.C. §§ 151a, 153. Minor disputes "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i). "Major" disputes, in contrast, concern "rates of pay, rules or working conditions," 45 U.S.C. § 151a, and relate to the formation of collective bargaining agreements or efforts to secure them. *See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) (*Conrail*). The question here is whether the Title VII claim is to be adjudicated independently of the RLA or whether the dispute can be characterized as "minor," and thus subject to the RLA's exclusive dispute resolution mechanism. *See Conrail*, 491 U.S. at 303–04, 109 S.Ct. at 2480–81 (explaining that under 45 U.S.C. §§ 151a and 153 minor disputes are subject to compulsory and binding arbitration before the National Railroad Adjustment Board).

█ The Supreme Court has instructed that minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation...." *Trainmen v. Chicago R. & I. Railway Co.*, 353 U.S. 30, 33, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957). Minor disputes seek to enforce contractual rights. *See Conrail* at 302, 109 S.Ct. at 2480. "The distinguishing feature of a minor dispute is that the dispute may be conclusively resolved by interpreting the existing CBA." *Id.* at 305, 109 S.Ct. at 2481. The Supreme Court recently reiterated that "minor disputes" are those that are "grounded" in the collective bargaining agreement, *Hawaiian Airlines*, —— U.S. at ——, 114 S.Ct. at 2245, and involve "duties and rights created or defined by the collective-bargaining agreement." *Id.* —— U.S. at ——, 114 S.Ct. at 2247. Adverting to *Conrail*, the Court in *Hawaiian Airlines* explained in more specific terms that a minor dispute cannot involve rights that emanate from sources outside the agreement. "Obviously, to say that a minor dispute can be 'conclusively resolved' by interpreting the collective bargaining agreement is another way of saying that the dispute does not involve rights that exist independent of the collective bargaining agreement." *Hawaiian Airlines*, —— U.S. at ——, 114 S.Ct. at 2250.

The CBA in this case provides that "[a]ny dispute involving the interpretation or application of any of the terms of this agreement ... may be referred by either party ... to a committee." The CBA also contains a "Non–Discrimination" rule, providing that "[t]hese rules will be applied by the parties in compliance with State and Federal laws and regulations and without regard to ... religion ... of the individuals covered by the rules." Defendant argues that because the CBA provides for arbitration of claims of religious discrimination, and because Felt seeks only contractually guaranteed benefits and remedies, thus necessitating reference to and interpretation of the CBA, the claim at issue here is "minor" in nature. We disagree.

█ There is no doubt that Title VII rights, which the CBA never expressly references, "exist independent of the collective bargaining agreement." *Hawaiian Airlines*,

— U.S. at ——, 114 S.Ct. at 2239. Because Title VII and the RLA, as applied to this railway agreement, each provide a mechanism for resolving a claim of religious discrimination does not mean that the Title VII rights are "created or defined" by the CBA. *Id.* —— U.S. at ——, 114 S.Ct. at 2250. Thus, whether Felt has a meritorious Title VII claim cannot be "conclusively resolved" merely by consulting the CBA. The RLA does not preclude litigation of Title VII rights. *Cf. Buell,* 480 U.S. at 564–65, 107 S.Ct. at 1414–16 (holding, in the only Supreme Court case to deal with RLA preclusion, that the RLA did not preclude suit under FELA for workplace injury, even though injury was caused by conduct that may have been subject to arbitration under the RLA); *Bates v. LIRR,* 997 F.2d 1028, 1030 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993) (holding that the arbitration procedures prescribed under the RLA are not appellants' sole forums for resolution of their claims under the Federal Rehabilitation Act, 29 U.S.C. § 794).

Defendant relies upon the more expansive definitions of "minor disputes" we discussed in *Melanson v. United Air Lines, Inc.,* 931 F.2d 558 (9th Cir.), *cert. denied,* 502 U.S. 865, 112 S.Ct. 189, 116 L.Ed.2d 150 (1991). In *Melanson,* we held that a state law tort action alleging employer misrepresentations as to the applicability of terms of a collective bargaining agreement was preempted by the RLA: We noted in dicta:

> We have also defined "minor disputes" as those which are "arguably" governed by the CBA or have a "not obviously insubstantial" relationship to the labor contract, "are 'inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the RLA,'" or which involve the interpretation of a current collective-bargaining agreement.

*Id.* at 562 (citations omitted). However, the language in *Melanson,* and the authorities from which its standard was taken, were all written before the Supreme Court refined the analysis of the scope of a "minor dispute" in *Hawaiian Airlines.*

Of course, the parties may expressly agree to arbitrate statutory claims outside the RLA. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 27, 111 S.Ct. 1647, 1652–53, 114 L.Ed.2d 26 (1991) (individuals may contractually agree to arbitrate employment disputes and thereby waive the statutory rights to which they would otherwise be entitled); *see also Mago v. Shearson Lehman Hutton Inc.,* 956 F.2d 932, 935 (9th Cir.1992) (rejecting, in the context of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, the argument that Title VII claims may not be arbitrated). We have ruled, however, that a Title VII plaintiff may be forced to forego her statutory remedies and arbitrate her claims only if "she has knowingly agreed to submit such disputes to arbitration." *Prudential Ins. Co. v. Lai,* 42 F.3d 1299, 1305 (9th Cir.1994), *petition for cert. filed,* 63 U.S.L.W. 3861 (U.S. May 22, 1995) (No. 94–1923). We noted in *Lai* that "Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII." *Id.* at 1304. In this case, where the CBA states only that its work rules will be applied in compliance with federal laws and without regard to religion, there is no express agreement to arbitrate Title VII disputes. *Gilmer* is not to the contrary. As the Second Circuit observed in *Bates, Gilmer* subjected a statutory discrimination claim to arbitration in reliance on the FAA's policy favoring arbitration; however, the FAA expressly excludes railway contracts from its reach. *Bates,* 997 F.2d at 1034; 9 U.S.C. § 1.

The defendant also argues that because its defense to Felt's charge of religious discrimination is based on a contractual right to terminate Felt's protected status when he failed to bid on the available slot, the CBA is implicated and the dispute is minor. To support this proposition, the defendant relies on the following language from *Conrail:* "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement." *Conrail,* 491

U.S. at 307, 109 S.Ct. at 2483. *Hawaiian Airlines*, however, has already disposed of the defendant's contention:

> [Petitioners] argue that this case involves a minor dispute because the termination of respondent was "arguably justified" by the [CBA]. This "arguably justified" standard, however, was employed only for policing the line between major and minor disputes.... Obviously, this test said nothing about the threshold question whether the dispute was subject to the RLA in the first place.

*Hawaiian Airlines*, —— U.S. at —— – ——, 114 S.Ct. at 2250–51.

Plaintiff-appellant is entitled to pursue his Title VII claim in district court. The district court's judgment dismissing for lack of subject matter jurisdiction is

REVERSED.