Filed:  May 11, 1999

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-1485
(CA-96-443-3-P)

Willie F. Caldwell,

Plaintiff - Appellant,

versus

Norfolk Southern Railway Co., etc.,

Defendant - Appellee.

O R D E R

The court amends its opinion filed April 20, 1999, as follows:

On the cover sheet, section 3, line 3 -- the spelling of the district judge's name is corrected to read "Potter."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIE F. CALDWELL,
Plaintiff-Appellant,

v.

No. 98-1485

NORFOLK SOUTHERN RAILWAY
COMPANY, a/k/a Norfolk Southern
Corporation,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-96-443-3-P)

Argued: March 3, 1999

Decided: April 20, 1999

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Joe Lee White, Collinsville, Oklahoma, for Appellant.
James Stanton Whitehead, SIDLEY & AUSTIN, Chicago, Illinois, for
Appellee. **ON BRIEF:** Mack Sperling, BROOKS, PIERCE,
MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro,
North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Willie Caldwell (Caldwell) brought this action against Norfolk Southern Railway Company (Norfolk) in the United States District Court for the Western District of North Carolina alleging that Norfolk discriminated against him on account of his race in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended. See 42 U.S.C. §§ 2000e - 2000e-17. The district court granted Norfolk's motion for summary judgment, concluding that Caldwell's Title VII claim was preempted by the Railway Labor Act (RLA). See 45 U.S.C. §§ 151 - 188.**1** We now affirm, but for reasons other than those stated by the district court.

I.

Caldwell is an employee at Norfolk's Charlotte Roadway Shop (the Shop), where he has worked as a machinist since September 7, 1971.

_____

**1** The district court described the question of whether the RLA precludes the application of Title VII in terms of preemption. The district court's description of this question is misleading because preemption involves the presence of a state law claim. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985). However, even though the district court should have described the relevant legal question in terms of whether one federal statute (the RLA) precludes the application of another federal statute (Title VII), see Atchison, Topeka & Santa Fe Railway Co. v. Buell, 480 U.S. 557, 562 (1987), the case law characterizes this question in terms of preemption. See e.g., Felt v. Atchison, Topeka & Santa Fe Railway Co., 60 F.3d 1416, 1418-19 (9th Cir. 1995). Because the case law characterizes this question as one of preemption, for clarity and uniformity, we do also. Further, because both the preemption of state law and the preclusion of federal statutory remedies involve questions of congressional intent, reliance on preemption cases is appropriate. See id.

2

The employees in the Shop are represented by a union, the International Association of Machinists and Aerospace Workers (the Union).

The Union and Norfolk are parties to a collective bargaining agreement and various side agreements (collectively the CBA) that prescribe the process for awarding new or vacant positions at the Shop. Rule 20 of the CBA provides as follows regarding the manner in which positions are bid and awarded:

> VACANCIES (PERMANENT) OR NEW POSITIONS
>
> RULE 20. (a) New positions and permanent vacancies in the respective crafts shall, except as provided in Rule 16, be bulletined previous to or within ten (10) days following the dates such vacancies occur for a period of five (5) days.
>
> (b) Applications for such positions or vacancies must be filed in writing with the appropriate carrier officer on or before 12 midnight of the fifth day of the bulletin period, with copy to the local chairman of the craft involved. Applications of employees failing to follow this procedure will not be considered.
>
> (c) Bulletined positions may be filled temporarily pending assignments.
>
> (d) Assignments to such new positions or vacancies shall be made within twenty (20) days from the date of bulletin and bulletin shall be posted announcing the name of the employee assigned.
>
> (e) An employee shall be given a reasonable trial [period] to prove his qualifications.
>
> (f) Except as otherwise provided in Rule 22 with respect to serious illness, an employee who is absent from work due to vacations or sickness may, within five (5) days after his return from vacation or sickness make application for positions bulletined during his absence.

3

> (g) Bulletins issued under this rule will uti-
> lize the sample forms appearing on pages 215 and 216 of
> this agreement.

(J.A. 207). Although Rule 20(e) provides that employees are entitled to a trial period in a new position, a special rule is applicable to "skill differential" machines such as the lathe at issue in this case. Skill differential machines[2] are governed by items three and four of Side Letter No. 16 of the Imposed Agreement dated July 31, 1993, which is part of the CBA. Those items state:

> 3. Employees seeking to qualify and train for work subject to a differential under this Article will qualify and train on [their] own time for such work. Employees will be given reasonable cooperation from their supervisors to do so.

> 4. An employee bidding on an assignment subject to a differential under this Article must be qualified, or demonstrate qualifications to [the] carrier on [their] own time, for such assignment before expiration of [the] bid period.

(J.A. 208).

On April 10, 1995, pursuant to the CBA's provisions, Norfolk bulletined a new position operating a piece of equipment at the Shop known as the Cincinnati Milacron CNC Lathe (the CNC Lathe). Four employees bid for the position, in order of seniority, they were: Caldwell, Rick Lash (Lash), Steven Dickens (Dickens), and David Reid. Other than his seniority, Caldwell had no qualifications for the CNC Lathe position. Caldwell only had two months' experience operating the lathe that was replaced by the CNC Lathe, and during those two months he had required periodic assistance. Caldwell had no experience writing programs for the old lathe. Moreover, he had never operated a CNC Lathe, or any other machinery built by Cincinnati Milacron, nor had he ever attended any courses to learn how to operate the CNC Lathe. Accordingly, Norfolk determined that Caldwell had no qualifications for the CNC Lathe position. When Lash, the

_____

[2] A "skill differential" machine is one whose operator receives a higher wage rate because of the higher skills required to operate it.

4

next most senior bidder, who is white, disclosed that he did not have any experience operating CNC Lathes, Norfolk did not award him the position.

The third most senior bidder was Dickens. Norfolk reviewed Dickens' employment application that showed he had manually set-up, programmed, and operated Cincinnati Milacron mills, boring machines, drills, and lathes. Dickens had been involved with setting up a Cincinnati Milacron vertical milling machine at the Shop and had helped, on occasion, the employees operating that machine. Based upon these qualifications, the CNC Lathe position was awarded to Dickens. Dickens was then sent to the Cincinnati Milacron factory for training.

On April 18, 1995, Caldwell filed an Equal Employment Opportunity Commission (EEOC) charge alleging that he was discriminated against due to his race because "[t]he position was awarded to a less senior white employee." (J.A. 11). On May 20, 1996, the EEOC determined that there was a reasonable basis to believe Caldwell's discrimination charge and concluded that Norfolk had a "practice of awarding jobs under the bid system based on company seniority" and the CBA required "that employees seeking job bids shall be given a reasonable trial to prove their qualifications." (J.A. 197).

On May 10, 1995, Caldwell commenced a grievance proceeding through the Union protesting the assignment of the position to a machinist with less seniority. On July 5, 1995, the grievance was denied by Norfolk. Caldwell and the Union appealed, and, on October 10, 1995, Norfolk denied the appeal. On March 4, 1996, Caldwell, the Union, and Norfolk agreed to submit the dispute for a hearing before the Public Law Board (PLB).[3] The PLB ruled that: (1) Norfolk's interpretation of the CBA was correct; (2) the interpretation urged by the Union and Caldwell (and accepted by the EEOC) was wrong; (3) Norfolk had complied with the terms of the CBA in awarding the

_____

[3] A PLB is a private arbitration board established by a rail carrier and a union under § 3 of the RLA. See 45 U.S.C. § 153. The parties may establish a PLB as an alternative to submitting a dispute to the National Railroad Adjustment Board (NRAB) for a final and binding decision under RLA § 3. See id.

5

CNC Lathe position; and (4) Caldwell had not been discriminated against.

After exhausting these administrative remedies and receiving a "right to sue" letter from the EEOC, Caldwell filed this action against Norfolk in the United States District Court for the Western District of North Carolina, claiming that he was the victim of a racially discriminatory breach of his rights under the CBA in violation of Title VII. Specifically, Caldwell claimed that Norfolk violated Title VII because, under the CBA, he was entitled to the CNC Lathe position due to his seniority.

On October 24, 1997, Norfolk filed a motion for summary judgment claiming it was entitled to judgment because: (1) Caldwell's Title VII claim was preempted by the RLA because the racial discrimination claim could not be resolved without interpreting the CBA; (2) Caldwell could not prevail on his Title VII claim because of the final and binding determination of the PLB that rejected his interpretation of the CBA; and (3) Caldwell's Title VII claim failed on the merits.

On March 3, 1997, the district court granted Norfolk's motion and entered judgment in favor of Norfolk on the ground that Caldwell's claim was preempted by the RLA because the racial discrimination claim could not be resolved without interpreting the CBA. Caldwell noticed this timely appeal.

II.

On appeal, Caldwell argues that the district court erred in concluding that his Title VII claim was preempted by the RLA. We need not decide whether Caldwell's claim is preempted by the RLA, because, even if Caldwell's claim is not preempted by the RLA, its lack of merit is apparent. See Washington v. Union Carbide Corp., 870 F.2d 957, 960 (4th Cir. 1989) (holding that preemption issue need not be decided if the insubstantiality of the underlying claim is apparent).

Caldwell alleges that Norfolk awarded the CNC Lathe position to a white employee with less seniority in violation of his rights under

6

the CBA. Because his Title VII claim is based upon indirect evidence, Caldwell's claim of discriminatory failure to promote must be analyzed under the McDonnell Douglas[4] paradigm that contains a familiar three-step proof scheme. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). The first of the three steps under McDonnell Douglas requires Caldwell to establish a prima facie case of discriminatory failure to promote. To accomplish this, Caldwell must demonstrate by a preponderance of the evidence that: (1) he is a member of a protected class; (2) Norfolk had an open position for which he applied; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. See Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995); Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). Under McDonnell Douglas, Caldwell cannot prove the third element--that he was qualified for the CNC Lathe position.

Caldwell alleges that he was qualified because he was the applicant with the most seniority. However, the CNC Lathe position for which Caldwell applied is subject to a skill differential. Under the plain language of the CBA, an employee bidding on a position subject to a skill differential "must be qualified, or demonstrate qualifications to [Norfolk] on [his] own time, for such assignment before expiration of bid period." (J.A. 208). Other than his seniority, Caldwell can prove no qualifications for the CNC Lathe position. Caldwell had only two months' experience operating the lathe that was replaced by the CNC Lathe and he had required periodic assistance during those two months. Caldwell had no experience writing programs for the old lathe. Moreover, he had never operated a CNC Lathe, or any other machinery built by Cincinnati Milacron, nor had he attended any courses to learn how to operate the CNC Lathe. Caldwell did not prove to Norfolk that he was qualified to operate the CNC Lathe before the bid period expired as required by the CBA. Therefore, Caldwell cannot establish a prima facie case under McDonnell Douglas. See St. Mary's Honor Ctr., 509 U.S. at 511. Accordingly, Caldwell has failed to establish a claim of discriminatory failure to promote under Title VII and Norfolk is entitled to summary judgment.

_____

**4** McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802 (1973).

7

III.

For the reasons stated herein, we affirm the district court's grant of summary judgment in favor of Norfolk.

AFFIRMED

8