**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1934
_____

SHEIDA HUKMAN,
                              Appellant

v.

AMERICAN AIRLINES, INC., f/k/a US Airways
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civil Action No. 2-17-cv-00741)
District Judge: Honorable Juan R Sánchez

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 23, 2019
Before:  JORDAN, BIBAS and PHIPPS, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 31, 2019)
_____

OPINION[*]
_____

PER CURIAM

        Pro se appellant Sheida Hukman appeals the District Court's dismissal of her

claims against Republic Airways Holdings ("Republic") and the grant of summary

judgment for American Airlines ("American").  Hukman alleges discrimination and

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. For the reasons that follow, we will affirm the District Court's judgment.

I.

Hukman identifies as a woman of Middle Eastern Kurdish descent from Iraq.[1] In 2007, Hukman began working as a customer service agent with American Airlines in Las Vegas, Nevada.[2] In early 2010, Hukman was transferred to the Philadelphia International Airport, where she continued to work as a customer service agent until she was terminated in 2015 after a three-year medical leave. Hukman was a union member, and the union operated under a Collective Bargaining Agreement ("CBA") with American.

Hukman sought to be promoted several times during the course of her employment. In January 2011, she applied for an open position. A manager gave her a perfect score on the approved Applicant Rating Form ("ARF") but did not give a reason for his score. A shift manager asked for an explanation and, when none was provided, a different shift manager completed a second ARF for Hukman, in which she was rated "below expectations" in several categories.

At her interview, Hukman provided unresponsive answers to numerous questions asking her how she would handle various situations. Hukman believed that she had done well, however. After Hukman was informed that she had not received a sufficiently high

---

[1] The following facts are undisputed unless otherwise noted.

[2] At the time of Hukman's employment, she was employed by US Airways, which has since merged with American Airlines and no longer exists. Accordingly, American is identified as Hukman's former employer throughout.

score to pass the threshold to be eligible for a promotion, she submitted a handwritten complaint stating that she believed she had not been "treated right" at the interview because she had been asked, "where do you come from?" See Supp. App'x at 461. The interviewer who had asked this question submitted a letter indicating that because Hukman's resume was not available, he had sought to find out where she had worked in the past; he indicated that after Hukman offered her ethnic background in response to the question, he immediately explained that he was looking for her to discuss her work history. An internal investigation concluded in July 2011 that there was no support for Hukman's allegation that she had been asked a discriminatory question. Hukman re-applied for a supervisor position in June 2012 and was again rated "below expectations" by a duty manager in several key categories on an ARF. Hukman ultimately canceled an interview that was scheduled for her in October 2012.

Hukman also made several requests in 2012 to transfer to a different airport. Per CBA policy, an employee was given one day to respond to a transfer offer and if the employee refused the offer or could not be reached, the offer was given to another employee. Hukman was offered transfers in February, March, and September 2012; she did not timely respond to the first two offers and rejected the third, according to American's records. Hukman claims that she knew only about the last offer. Hukman has alleged without support that other employees with less seniority were approved for transfers and she was not. Hukman also applied for several transfers in 2015 that were not considered because she was on leave at the time, as explained further below.

3

Hukman had numerous conflicts with her co-workers during her employment at the Philadelphia airport, culminating in an incident that led to her termination. Hukman testified at a deposition that she believed that as early as 2010, certain co-workers were tapping her phones, spreading rumors about her, turning invisible and walking through solid objects, stalking her, spying on her at her apartment complex and taking her mail, speaking a "reverse" language, practicing witchcraft, and stealing her clothes and burying them in a cemetery. See id. at 97-139, 265.

In 2011, Hukman reported behavior by numerous co-workers, including Kevin Bailey, that she believed was intended to harass her. A senior manager investigated Hukman's complaints and found that most of them could not be substantiated, but did conclude that Bailey had authored and circulated a petition asking that Hukman be fired. Hukman alleged that the petition said that she should be "sent back to Phoenix wherever [sic] she came from." See id. at 267. At the end of her investigation, the senior manager informed Hukman that the petition had no impact on her employment status and that she had reminded the other employees involved of American's anti-discrimination policies.

Hukman next claimed that a co-worker had asked her in March 2012 if she had brought a bomb to the airport when he smelled something burning. Hukman then had altercations with co-worker Debbie Zanikos in May and September 2012. Hukman believed that Zanikos had accused her of delivering drugs because Hukman was Middle Eastern. Hukman further asserted that Zanikos was stalking and threatening her, stealing her financial information, asking others to spy on her, and practicing witchcraft. Zanikos

4

reported that Hukman had made accusations against her and threatened to sue her. Hukman claimed later in September that unidentified individuals were changing the login information and language settings for her work account and accessing her account without authorization. Additionally, Hukman maintained that another co-worker had called her a terrorist, but she provided no further details about when or how that occurred.

Finally, on November 15, 2012, Hukman had an altercation while she was boarding passengers for a departing Republic flight. When Hukman began boarding passengers with travel privileges, a Republic flight attendant sought to board the plane before another passenger who had a lower boarding priority under Republic's policy. Hukman would not allow her to board. A Republic pilot sought to intervene, and he and Hukman loudly argued about the boarding priority policy in front of other passengers. Several witnesses corroborated their heated exchange.

After an investigation into the above incident, Hukman was issued a disciplinary letter at the lowest level of written discipline; the pilot was also found to have acted unprofessionally. At a meeting about her disciplinary letter on December 2, 2012, Hukman was erratic, combative, and non-responsive to basic questions about her schedule and her position; she also gave inconsistent answers to several questions and stated that she believed there was a conspiracy behind the incident. She also insisted that she could board passengers in the order she believed was right, regardless of the boarding priority policy. Hukman believed that the conflict that led to her being placed on leave had been a "setup" by her co-workers. See id. at 124. Soon after, one of Hukman's co-

5

workers reported to management that Hukman had accused her of wiretapping her cellphone under the direction of the Federal Bureau of Investigation; she also indicated that she had heard Hukman make derogatory comments about other co-workers.

After the meeting, several managers expressed concern about Hukman's behavior. On December 10, 2012, Hukman was issued a letter informing her that, pursuant to the CBA, she would be required to undergo an independent medical examination before she could return to work. Hukman was placed on an unpaid leave of absence. In January 2013, Hukman saw a psychiatrist selected by American. The doctor concluded that Hukman needed to obtain mental health treatment and undergo psychological testing before she could resume her duties at work.

On February 20, 2013, Hukman was sent a letter confirming that her unpaid leave of absence would continue until she could safely return to her position. The letter indicated that Hukman could appeal the decision by hiring a medical examiner to conduct an additional examination of the same issues addressed by the doctor selected by American. Hukman did not appeal or seek treatment. On December 10, 2015, Hukman was terminated from her position after she did not comply with the treatment plan.

Hukman filed four complaints with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation: in August 2011, June 2012, December 2012, and June 2016. Hukman was issued right-to-sue letters regarding her charges in November 2016.

Hukman then commenced this action in the District Court in February 2017. She

claimed that she had faced discrimination and retaliation by American due to her national origin; she also named Republic as a defendant in several initial complaints. The District Court granted Republic's motion to dismiss after Hukman filed a third amended complaint, although it was unclear whether Hukman was continuing to pursue claims against Republic in that latest complaint. The District Court permitted her claims against American to proceed.[3] After the parties completed discovery, American and Hukman filed cross-motions for summary judgment. The District Court held a hearing on the motions and ultimately granted American's motion and denied Hukman's. Hukman then moved to disqualify the District Judge, and that motion was also denied. Hukman timely appealed, challenging the dismissal of her claims against Republic, the grant of summary judgment for American, and the denial of her motion to disqualify the District Judge.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal and summary judgment decisions. See Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009); Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to

---

[3] The District Court also dismissed claims Hukman brought against numerous individual defendants in an early complaint; Hukman does not challenge that decision on appeal.

7

return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).

III.[4]

First, the District Court properly dismissed Republic as a defendant because

Hukman was not employed by Republic.  Although Hukman was helping another agent

---

[4]  We agree with the District Court that Hukman's Title VII claims are not precluded by
the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.  The RLA does not preclude the
litigation of Title VII rights merely because American had policies in place pursuant to a
CBA.  The RLA provides a mandatory arbitration framework for resolving "[m]inor
disputes involv[ing] controversies over the meaning of an existing collective bargaining
agreement in a particular fact situation."  Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246,
253 (1994) (internal quotation marks and citation omitted).  However, "purely factual
questions about an employee's conduct or an employer's conduct and motives do not
requir[e] a court to interpret any term of a collective-bargaining agreement."  Id. at 261
(internal quotation marks and citation omitted); see also In re Cont'l Airlines, Inc., 484
F.3d 173, 183 (3d Cir. 2007) ("Minor disputes are those which relate either to the
meaning or proper application of a particular provision of a collective bargaining
agreement.") (internal quotation marks and citation omitted).
    The resolution of Hukman's claims centrally requires analyzing her conduct and
American's conduct and motives; Hukman does not challenge any provision of the CBA
as discriminatory.  See Rabe v. United Air Lines, Inc., 636 F.3d 866, 873 (7th Cir. 2011)
(concluding that Title VII and other discrimination claims were not precluded by the
RLA where a CBA was "relevant" to a litigant's claims but her claims did "not call the
policy itself into dispute"); Felt v. Atchison, Topeka & Santa Fe Ry. Co., 60 F.3d 1416,
1420 (9th Cir. 1995) (explaining that where the merits of a litigant's "Title VII claim
cannot be 'conclusively resolved' merely by consulting [a] CBA, . . . . [t]he RLA does
not preclude litigation of Title VII rights").  American's insistence on appeal that
Hukman's claims are barred by the RLA because the CBA includes provisions about
promotions, transfers, and the independent medical examination requirement, among
others, lacks support.  See Carlson v. CSX Transp., Inc., 758 F.3d 819, 833 (7th Cir.
2014) ("[A] claim is not barred [by the RLA] simply because the action challenged by the
plaintiff is arguably justified by the terms of the CBA.") (internal quotation marks and
citations omitted).  Accordingly, the District Court correctly concluded that it had subject
matter jurisdiction to consider Hukman's Title VII claims.

8

in boarding a Republic flight on November 15, 2012, at no point has Hukman alleged

sufficient facts to indicate that Republic exercised any level of control over her

employment. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992)

(concluding in the ERISA context that "whether a hired party is an employee under the

general common law of agency" depends upon "the hiring party's right to control the

manner and means by which the product is accomplished") (citation omitted); Covington

v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 119 (3d Cir. 2013)

(explaining that "[i]n order to state a Title VII claim, [a plaintiff] must allege an

employment relationship with the defendant[]" under the factors set out in Darden).

The District Court also properly granted American summary judgment on

Hukman's discrimination and retaliation claims. First, Hukman failed to state a prima

facie case of discrimination based on American's decisions regarding her applications for

promotion, her transfer applications, the discipline she faced in November 2012, and her

ultimate termination. Even assuming that Hukman could establish the first three

elements of a prima facie case,[5] she has produced no evidence that would create an

inference of national origin discrimination in American's promotion, transfer,

disciplinary, and termination decisions. See Sarullo v. U.S. Postal Serv., 352 F.3d 789,

---

[5] To state a prima facie case of national origin discrimination premised on an adverse employment action, a plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

798 (3d Cir. 2003) (per curiam) ("The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their [membership in a protected class].") (internal quotation marks and citations omitted).

The only action by Hukman's superiors that could possibly be construed as having to do with Hukman's national origin was the question posed during her 2011 promotion interview regarding where she "came from." However, given the context of the question — where her interviewers did not have information about her prior work experience and immediately clarified that they were asking about that experience when she volunteered her national origin — Hukman's subjective belief that she was not promoted because of her national origin is insufficient to make out a prima facie case of discrimination. See Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016) (explaining that a litigant "may not rest on speculation and conjecture in opposing a motion for summary judgment."). Hukman's unsupported allegations on appeal that co-workers of a different national origin were treated more favorably in receiving promotions and transfers are similarly insufficient.[6]

Hukman also failed to state a prima facie case of a hostile work environment claim because she did not set forth sufficient evidence to demonstrate that her workplace was

---

[6] Hukman also argued in the District Court that she had been subjected to discrimination because she: (1) did not receive supervisor overtime pay when she temporarily filled in as a supervisor; (2) was not paid a language premium; and (3) was not recalled to the Las Vegas airport when she was on leave. Because Hukman produced no evidence that these actions had any connection to her national origin, the District Court properly concluded that she could not state a prima facie case of discrimination based on these allegations.

"permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."[7] See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Hukman argues on appeal that her work environment was hostile because Bailey's petition had a severe effect on her. Although Bailey's petition was inappropriate, and Hukman has alleged three offensive comments by other co-workers between her transfer to Philadelphia in 2010 and her placement on a medical leave almost three years later, Hukman has not pointed to evidence demonstrating that those instances objectively changed the conditions of her employment. See Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 280 (3d Cir. 2001) ("Title VII is not violated by the mere utterance of an . . . epithet which engenders offensive feelings in an employee or by mere discourtesy or rudeness, unless [it is] so severe or pervasive as to constitute an objective change in the conditions of employment.") (internal quotation marks and citation omitted).

Further, Hukman has not pointed to any evidence suggesting a causal connection between any of her EEOC filings and any adverse employment actions taken against her

---

[7] To state a prima facie case of discrimination based on the existence of a hostile work environment, "a plaintiff must show that 1) the employee suffered intentional discrimination . . . 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability [meaning the employer is responsible]." Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks and citation omitted).

such that she could establish a prima facie case of retaliation.[8]  A plaintiff asserting a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).  A plaintiff can make this showing "by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity 'unusually suggestive of retaliatory motive.'" Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 260 (3d Cir. 2017) (internal citations omitted).  Other "proffered evidence, looked at as a whole, may [also] suffice to raise the inference" of an employer's retaliatory motive. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Hukman filed four EEOC complaints: (1) on August 31, 2011, regarding her promotion application that was denied in June 2011; (2) on June 7, 2012, regarding her in-progress promotion application and her May 2012 altercation with Zanikos; (3) on December 11, 2012, regarding her November 2012 discipline for the altercation boarding the Republic flight; and (4) on June 2, 2016, regarding her December 2015 termination and the process leading up to it.  The periods of time that passed between Hukman's EEOC complaints and American's decisions regarding promotions, transfers, and her ultimate termination are not "unusually suggestive of retaliatory motive" such that they

---

[8]  A prima facie case of retaliation requires a plaintiff to establish that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted).

12

could establish but-for causation.  See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (concluding that a gap of over two months to be insufficient alone to be "unduly suggestive" of retaliation).  There is no evidence that would indicate a pattern of antagonism or inconsistent explanations for American's actions; rather, Hukman had opportunities to pursue promotions, accept transfers, and either appeal the determination about her mental health or seek medical care that would have permitted her to return to work after November 2012.  Accordingly, Hukman has not made out a prima facie case of retaliation.

Finally, the District Judge did not err in denying Hukman's post-judgment motion for disqualification, which was primarily driven by her disagreement with the outcome in her case.  See Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3d Cir. 2000).  "[A] party's displeasure with legal rulings does not form an adequate basis for recusal."  Id.

Accordingly, we will affirm the judgment of the District Court.[9]

---

[9]  Additionally, we deny Hukman's and American's motions to strike.