In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-4290

STEVEN PETERS,

*Plaintiff-Appellant,*

*v.*

GILEAD SCIENCES, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 04 C 1338—**John Daniel Tinder**, *Judge.*

ARGUED MAY 22, 2007—DECIDED JULY 14, 2008

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Steven Peters suffered a shoulder injury while he was employed by Gilead Sciences, Inc. He took a relatively short medical leave to have corrective surgery, and when his condition did not improve after returning to work, he took another leave. During his second absence, Gilead filled his position with another employee, and when Peters returned to work, Gilead offered him a different position. He declined and Gilead terminated his employment.

Peters filed suit against Gilead, alleging (as relevant here) a violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and a claim for promissory estoppel under Indiana law. Gilead moved for summary judgment on the FMLA claim, arguing that Peters was ineligible for FMLA leave based on a provision in the Act that excludes employees at worksites at which less that 50 employees are employed "if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii). It was undisputed that Gilead employed less than 50 employees within 75 miles of Peters' worksite, making him statutorily ineligible for FMLA leave. It was also undisputed that if Peters *was* eligible for FMLA leave, Gilead had miscalculated the 12-week duration of his leave and replaced him before it expired.

Relying on language in *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000), Peters argued that Gilead was equitably estopped from asserting the FMLA's 50/75 exclusion based on representations made in Gilead's employee handbook and in letters it sent to Peters regarding his entitlement to 12 weeks of medical leave. The district court concluded Peters had not established the elements of equitable estoppel and granted summary judgment for Gilead.

We reverse. While *Dormeyer* suggested that FMLA eligibility might, "in an appropriate case," arise by estoppel, the issue need not have been addressed in this case. Peters alleged a state-law claim for promissory estoppel—an equitable contract remedy that permits enforcement of a promise that induces actual and reasonable reliance on the part of the plaintiff, at least to the extent of the plaintiff's reliance damages. The doctrine is

available when a promise lacks the elements of contract; a threshold question is whether the promise created an enforceable contract.

The medical-leave representations contained in Gilead's employee handbook (repeated in its letters to Peters) may have created an enforceable contract under Indiana law, giving Peters a *contractual* right to the equivalent of FMLA leave (that is, 12 weeks) regardless of his statutory ineligibility. If the representations in the handbook are not contractually enforceable, Indiana's promissory-estoppel cause of action allows enforcement of Gilead's promises to the extent of the reliance harm Peters suffered. Accordingly, we need not decide whether this is an "appropriate case" to apply FMLA eligibility-by-estoppel, a possibility assumed but not decided in *Dormeyer*.

## I. Background

In July 2001 Peters began employment as a Therapeutic Specialist for Gilead, a pharmaceutical company. As a Therapeutic Specialist, Peters worked from his home in Indianapolis representing and marketing Gilead's products to physicians and healthcare professionals in its Midwest region. In November 2001 Peters suffered a work-related injury to his neck and right shoulder. When he reaggravated his shoulder in October 2002, Peters reported the injury to Gilead and filed a worker's compensation claim. At the end of November, his physician imposed lifting restrictions, and Peters worked under these restrictions until early December of that same year. He then underwent corrective surgery, taking what he thought was FMLA medical leave from December 5 through December 16, 2002.

The day after his leave started, Peters received a letter from Gilead stating in part:

> The Federal Family and Medical Leave Act ("FMLA") went into effect August 5, 1993. The act grants eligible employees of covered employers up to twelve weeks of unpaid leave in a twelve month period to care for a newborn or adopted or foster child, to care for the seriously ill parent, child, or spouse of the employee, or to attend to the employee's own serious health condition. To be eligible for FMLA benefits, an employee must have worked for a covered employer for a total of 12 months and have worked at least 1,250 hours over the previous twelve months.

> You will retain your employee status during the period of your FMLA Leave. This includes accrual of tenure and vacation, in addition to continued health benefits coverage. You will be guaranteed reinstatement in your position, or equivalent position, if you return to work by the time your FMLA leave expires. In this case, since your leave began December 5, 2002, you will need to return to work by February 28, 2003 to be guaranteed such reinstatement.

This excerpt (with the exception of the specific start and end dates for the leave) tracks language in Gilead's employee handbook regarding employees' entitlement to family and medical leave. The handbook provides, under the bold heading "FAMILY AND MEDICAL CARE LEAVE" and the subheading "ELIGIBILITY": "A request for family and medical care leave will be granted for all employees employed by the Company [Gilead] for at least twelve months and who have worked 1,250 hours during the twelve months preceding the commencement

of leave." Like the letter Peters received, the handbook guarantees 12 weeks of family and medical leave during a 12-month period and reinstatement to the same (or an equivalent) position with the company upon return to work.

Peters returned to work on December 16, 2002, and worked under restrictions that limited him to left hand and arm work. On March 4, 2003, Peters took a second leave when his doctors began treating him with Neurontin, a drug that causes significant side effects. This second leave lasted until May 5, 2003. At the start of this second leave, Gilead sent Peters a letter, similar to the first, again setting forth his eligibility for medical leave. Dated March 17, 2003, this letter stated:

> In this case, your original leave began December 5, 2002, and you returned to work as of January 26, 2003 (7 weeks and 4 days). Since you reestablished your leave as of March 4, 2004, you will need to return to work by April 4, 2003 (4 weeks and 3 days) to be guaranteed such reinstatement.

The letter erroneously identified January 26 as the date Peters returned from his first leave. In fact, his first leave only lasted until December 16, 2002. Accordingly, the April 4, 2003 return-to-work deadline in the letter was incorrect.[1] Properly calculated, Peters' second leave would have run through May 9, 2003.[2] Peters never

---

[1] There is no dispute that the second letter miscalculated Peters' available leave time.

[2] May 9 is the last day of the twelfth workweek of available leave. According to Gilead's employee handbook, "[e]ligible
(continued...)

received this second letter with the miscalculated return-to-work date, however. Gilead sent it by certified mail, but apparently no one at Peters' residence signed for it.

In early April 2003, Gilead decided to replace Peters with another employee. On April 16, 2003, Frank Romeo, Gilead's Associate Director for Human Resources, received a letter from Peters' doctor releasing him to return to work on May 5, 2003, within what would have been his properly calculated return-to-work deadline. On April 21 Gilead offered Peters' Therapeutic Specialist position to an outside candidate who accepted and began employment on April 28, 2003. By letter dated April 25, 2003, Gilead informed Peters that because he held a "key" position, Gilead could not keep his job open.[3]

---

[2] (...continued)
employees shall be entitled to twelve workweeks of designated family and medical care leave during a twelve-month period." This corresponds to the FMLA's guarantee of twelve weeks of family and medical care leave during a twelve-month period. 29 U.S.C. § 2612(a)(1).

[3] The FMLA permits employers to deny job restoration protection for "key" salaried FMLA-eligible employees. *See* 29 U.S.C. § 2614(b)(2). A Department of Labor Regulation states "an employer may deny job restoration to salaried eligible employees ('key employees,' as defined in paragraph (c) of § 825.217) if such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer." 29 C.F.R. § 825.216(c). "A 'key employee' is a salaried FMLA-eligible employee who is among the highest paid 10 percent of all the employees employed by the employer within 75 miles of the employee's worksite." 29 C.F.R. § 825.217(a); 29 U.S.C. § 2614(b)(2). Gilead's employee handbook states

(continued...)

This letter advised Peters that his old position had been filled but offered him placement as a Senior Sales Analyst. Peters declined this alternative position, and Gilead terminated his employment.

Peters sued Gilead in federal court, alleging causes of action under Title VII, the FMLA, and the Americans with Disabilities Act. Peters also asserted claims for retaliatory discharge and promissory estoppel under Indiana law. Gilead moved for summary judgment. Regarding the FMLA claim, Gilead argued Peters was not an "eligible employee" as defined in the Act. Peters filed a cross-motion for partial summary judgment, claiming Gilead was estopped from asserting a statutory ineligibility defense to FMLA liability.

The district court granted summary judgment for Gilead on the Title VII and ADA claims, as well as the state-law claim for retaliatory discharge.[4] The FMLA count survived, and the state-law promissory-estoppel

---

[3] (...continued) that "[c]ertain key employees may be denied job reinstatement if substantial and grievous economic injury to Gilead would result if the employee were reinstated." The handbook also states that "Gilead will notify any key employee of his/her job status as a key employee upon requesting leave." Gilead did not notify Peters that he was considered a "key employee" until April 25, 2003, long after his second leave request was granted. In any event, the issue of whether Peters is a "key employee" has not been raised on appeal.

[4] The dismissal of these claims is not at issue on appeal.

claim was not specifically addressed.[5] Gilead then filed a motion for reconsideration as to the FMLA claim, which the court granted, concluding that Peters had not established the elements of equitable estoppel. The court held that Peters failed to present evidence from which a trier of fact reasonably could have inferred he was capable of returning to work by April 4, the return-to-work date specified in Gilead's second letter to Peters. If Peters was physically unable to work by that date, the court reasoned, he could not have detrimentally relied on Gilead's representations in deciding when to return to work.

## II. Discussion

We review the district court's order granting summary judgment de novo, viewing the facts and all reason-

---

[5] In its brief supporting its summary-judgment motion, Gilead noted that Peters brought an Indiana common-law claim for promissory estoppel/detrimental reliance but recharacterized it as a claim for equitable estoppel: "Because this is an equitable estoppel claim under a federal statute, federal (not Indiana) law principals [sic] of equitable estoppel are applicable." We disagree that a claim for relief grounded in promissory estoppel is interchangeable with the doctrine of equitable estoppel. While both are equitable judicial doctrines based on detrimental reliance, the former is a cause of action and the latter is a defensive doctrine used to bar the opposing party from asserting a claim or defense. A remedial aspect of state contract law, a promissory-estoppel cause of action permits the enforcement of a promise that otherwise lacks the elements of a contract. "Promissory estoppel is a sword, and equitable estoppel is a shield." *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir. 1981).

able inferences drawn from them in the light most favorable to the nonmoving party. *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 994 (7th Cir. 2007); *DeBoer v. Vill. of Oak Park*, 267 F.3d 558, 565 (7th Cir. 2001).

The parties agree that Peters did not meet the statutory requirements for FMLA eligibility. More precisely, Peters falls within an exception to the general statutory definition of "eligible employee" for employees at worksites at which the employer employs less than 50 employees "if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii). The so-called "50/75" provision is an exception to the FMLA's general eligibility provision, which premises eligibility on an employee's having worked for the employer for at least 12 months and worked a minimum of 1,250 hours during the previous 12 months. *See* 29 U.S.C. § 2611(2)(A).

Gilead's employee handbook and its letters to Peters recited the 12-month, 1,250-hour prerequisites for family- and medical-leave eligibility, but listed no further requirements or exceptions. That is, the handbook and letters stated that family and medical leave would be provided to "*all* employees" who were employed with Gilead for at least 12 months with a minimum of 1,250 hours worked during the prior 12 months; neither the handbook nor the letters contained any reference to the 50/75 exception.

Peters claims this omission equitably estops Gilead from asserting a defense of statutory ineligibility that would otherwise bar his FMLA claim. It is true that in *Dormeyer* we suggested equitable estoppel might, "in an appropriate case," be applied to block the assertion of an available statutory defense in an FMLA action: "[A]n

employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim to entitlement to family leave." *Dormeyer*, 223 F.3d at 582. But the factual predicates for application of equitable estoppel were not present in *Dormeyer*, and the issue was not further elaborated.[6] *Id.* at 582-83.

We need not consider whether this is an appropriate case to take up where *Dormeyer* left off. Peters brought a state-law claim for promissory estoppel based on his reliance on Gilead's representations regarding his entitlement to medical leave. Indiana recognizes this cause of action in the employment context and has adopted the formulation of the claim set forth in the *Restatement (Second) of Contracts* § 90(1): "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise." *See Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 121 (Ind. 1994). This species of contract claim sounds in equity, as do other forms of estoppel, *see Brown v. Branch*, 758 N.E.2d 48, 51-52 (Ind. 2001), but is an affirmative cause of action and thus differs from equitable estoppel, which

---

[6] Other circuits have recognized the availability of equitable estoppel to defeat a defense of FMLA ineligibility. *See Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 358 (5th Cir. 2006); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002); *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 723-25 (2d Cir. 2001).

operates defensively to bar the assertion of a claim or defense. Promissory estoppel steps in where a promise lacks the elements of a binding contract but has induced detrimental reliance on the part of the promisee. Sometimes the facts of a given case raise a threshold question of whether the promise created an enforceable contract in the first place.[7]

Gilead's employee handbook promised 12 weeks of medical leave—the equivalent of the leave guaranteed by the FMLA—and Gilead repeated these promises in its letters to Peters. It is not clear whether this is sufficient to establish a binding contract under Indiana law. *See Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 719-20 (Ind. 1997) (discussing, without resolving, the question whether "unilateral contracts in the employment context always require adequate independent consideration and whether an employee handbook can ever constitute a unilateral contract serving to modify the otherwise at-will employment relationship"); *see also Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000) (citing *Orr* and noting that "Indiana has yet to decide whether to follow" other states in holding that employee handbooks may, under certain circumstances, create binding contracts); *Damon Corp. v. Estes*, 750 N.E.2d 891, 893 (Ind. Ct. App. 2001) (enforcing the terms of an employee handbook in favor of employer); *Ind. Heart Assocs., P.C. v. Bahamonde*, 714 N.E.2d 309, 311-12 (Ind. Ct. App. 1999) (same); *Die & Mold, Inc. v.*

---

[7] We questioned counsel about the state-law theory of this case at oral argument, and the parties agreed that jurisdiction was secure under 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1653, Peters has since repleaded the jurisdictional component of his complaint to properly invoke diversity jurisdiction.

*Western*, 448 N.E.2d 44, 48 (Ind. Ct. App. 1983) (same).[8]

---

[8] In *Orr*, the Indiana Supreme Court was confronted with the question of whether an employee handbook was sufficiently contractual to convert an at-will employment relationship into one terminable only for cause. *Orr v. Westminster Vill. N., Inc.*, 689 N.E.2d 712, 719-20 (Ind. 1997). After declining to specifically decide the question, *id.* at 720 ("we decline plaintiffs' invitation to use this case as a vehicle for resolving these questions"), the Court went on, for the sake of argument, to analyze the case under the approach used in Illinois for determining whether an employee handbook creates a contract. *Id.* (citing *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987)). We have previously noted, based on *Orr*, that the issue remains unresolved in Indiana. *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000). We are aware of two decisions of the Indiana Court of Appeals that read *Orr* as rejecting the proposition that an employee handbook can create a contract. *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 889 (Ind. Ct. App. 2007) (citing *Orr* for the proposition that "[u]nder Indiana law, employee handbooks do not constitute unilateral contracts of employment"); *City of Indianapolis v. Byrns*, 745 N.E.2d 312, 317 n.3 (Ind. Ct. App. 2001) ("We also note our supreme court's explicit rejection of the proposition that employee handbooks or guidelines create so-called unilateral contracts of employment[,]" citing *Orr*.). These decisions are difficult to reconcile with the language of *Orr* itself and also with a line of Indiana cases that has enforced the terms of employee handbooks running in favor of employers on the issue of employees' entitlement to vacation pay upon termination. *Damon Corp. v. Estes*, 750 N.E.2d 891, 893 (Ind. Ct. App. 2001); *Ind. Heart Assocs., P.C. v. Bahamonde*, 714 N.E.2d 309, 312 (Ind. Ct. App. 1999); *Die & Mold, Inc. v. Western*, 448 N.E.2d 44, 48 (Ind. Ct. App. 1983).

In the absence of a binding contract, however, Indiana permits enforcement of Gilead's promises to the extent of Peters' reliance damages. *Orr*, 698 N.E.2d at 718; *Jarboe*, 644 N.E.2d at 121; *Clark v. Millikin Mortgage Co.*, 495 N.E.2d 544, 547 (Ind. Ct. App. 1986). Under Indiana law, the promissory-estoppel cause of action requires: "(1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise." *Brown*, 758 N.E.2d at 52. The undisputed evidence here establishes the first four elements of this cause of action; the fifth relates to the scope of the remedy. *Jarboe*, 644 N.E.2d at 121-22.

If the medical-leave provisions in Gilead's employee handbook are actionable as a contract or as a promise giving rise to recovery under promissory estoppel, Gilead's invocation of the FMLA's 50/75 exception, and Peters' assertion of equitable estoppel to block it, are simply beside the point. Gilead's handbook does not exclude any employees from the entitlement to 12 weeks of family and medical leave except those who do not meet the basic prerequisites of 12 months' employment with the company and 1,250 hours of work in the preceding 12 months. There is no reason employers cannot offer FMLA-like leave benefits using eligibility requirements less restrictive than those in the FMLA, *cf. Harrell v. United States Postal Serv.*, 445 F.3d 913, 924 (7th Cir. 2006), and that is what Gilead did. Peters' statutory ineligibility is irrelevant to the contract-based theories of liability.

The issue of Peters' ability to return to work by the April 4 date specified in Gilead's second letter is likewise irrelevant. There is no dispute that if Peters is entitled to

12 weeks of medical leave (either contractually or by application of promissory estoppel), then the April 4 date was miscalculated. Twelve weeks of leave expired on May 9, and it is undisputed that Peters was medically cleared to return to work on May 5.

The district court did not address whether Gilead's promises are actionable as a contract or under promissory estoppel. This was understandable because the parties focused their arguments on *Dormeyer* and the equitable estoppel theory as a means of establishing eligibility under the FMLA. As we have explained, however, using equitable estoppel to block an employer from asserting a statutory defense to FMLA liability is not the same as using promissory estoppel to enforce a promise by an employer to allow 12 weeks of medical leave. Promissory estoppel is a well-established state-law remedy; on the other hand, the availability of equitable estoppel to block a statutory defense to FMLA eligibility has been assumed but not decided in this circuit. We think the prudent course is to remand this case for consideration of Gilead's liability under state law. The leave provisions in Gilead's employee handbook may be enforceable as a contract under Indiana law; at the least, they are promises giving rise to recovery under promissory estoppel. We note for purposes of the proceedings on remand that the scope of recovery may differ. *See Jarboe*, 644 N.E.2d at 121-22 (discussing the difference between contract "expectancy" damages and promissory estoppel "reliance" damages).

REVERSED and REMANDED.