# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-3300

LAURENCE H. RABÉ,

*Plaintiff-Appellant*,

*v.*

UNITED AIR LINES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 6012—**Rebecca R. Pallmeyer**, *Judge.*

SUBMITTED MAY 5, 2010*—DECIDED FEBRUARY 28, 2011

Before EASTERBROOK, *Chief Judge*, and COFFEY and
HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This case presents issues
concerning the application of United States employment

---

* After examining the briefs and the record, we have
concluded that oral argument is unnecessary. Thus, the
appeal is submitted on the briefs and the record. See Fed. R.
App. P. 34(a)(2)(C).

discrimination laws to an international employment relationship in which the parties agreed to application of United States law. Plaintiff-appellant Laurence Rabé, a French citizen, worked as a flight attendant out of the Hong Kong and Paris bases of United Air Lines. Rabé's employment contract provided that it would be governed exclusively by "applicable United States law" and that only courts and administrative bodies of the United States and Illinois could hear disputes relating to her terms of employment. When the company fired her for alleged misconduct, she sued in the United States District Court claiming that United had discriminated against her on the basis of her national origin, age, and sexual orientation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, the Age Discrimination in Employment Act, 29 U.S.C. § 623, and the Illinois Human Rights Act, 775 ILCS 5/1-102, 5/2-102. The district court dismissed the case, concluding that it lacked subject matter jurisdiction because Rabé is a foreign national who worked for United abroad.

We reverse the judgment and remand for further proceedings. First, whether Rabé worked in the United States is an issue affecting the merits of her claims but not the district court's subject matter jurisdiction. We also conclude that the parties' employment contract had the effect of applying the substantive provisions of United States and Illinois employment discrimination laws to Rabé as a matter of contract law. Finally, Rabé's claims are not precluded or preempted by the Railway Labor Act. We offer no comment on the merits of Rabé's claims except to say that she is entitled to try to prove them on the merits.

I. *Plaintiff's Employment with United Air Lines*

United hired Rabé in November 1993 to work in France out of the company's Paris hub. She signed an individual employment contract at United's head-quarters in Chicago, Illinois. The contract specified that her work would "be performed on board United's aircraft registered in the USA as they operate on routes throughout the Company's worldwide system," and that the aircraft would "constitute the establishment where" she performed her employment. The individual contract also required Rabé to join the Association of Flight Attendants, the American labor union that repre-sents United flight attendants.

The contract provided in articles 5 and 6 that "the terms and conditions" of Rabé's employment would "be governed exclusively by applicable United States law, including the Railway Labor Act and the AFA [collective bargaining] agreement," and that jurisdiction over all employment-related claims would lie exclusively in courts and administrative bodies of the United States and Illinois. The individual contract even said that it would not be valid unless Rabé wrote by hand: "Read and approved, valid for agreement and in particular for acceptance of the choice of US law clause (article 5) and of the jurisdiction clause (article 6)."

United transferred Rabé to its Hong Kong base in 1997. According to her complaint, ninety percent of her flights were to or from United States destinations until May 2002, when she took a voluntary furlough from the company. United recalled Rabé from the furlough

in August 2005. Still based in Hong Kong, she worked only flights between Asian airports before things went sour between her and United in 2007. According to Rabé, who is a lesbian, her new supervisor once told her that he believed it is "not right to be gay" and made comments suggesting that he suspected she is a lesbian. In September 2007, the supervisor initiated an investigation of Rabé for allegedly misusing company-issued travel vouchers. Rabé contends that the investigation was a pretext for the supervisor to fire her for invidious reasons. At the end of the investigation in April 2008, United fired Rabé, who was then 40 years old.

II. *Proceedings in the District Court*

Rabé filed this lawsuit in October 2008, and United moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. United argued that Title VII and the ADEA do not apply to non-citizens working outside the United States and that the Illinois Human Rights Act does not apply to work outside Illinois. Alternatively, United argued that Rabé's claims are precluded (or preempted in the case of the state law claim) by the Railway Labor Act, 45 U.S.C. §§ 151-188. The district court dismissed Rabé's complaint for lack of subject matter jurisdiction, reasoning that United States employment discrimination laws do not apply to her because she did not spend significant time working in Illinois or elsewhere in the United States. The court did not reach United's argument that the Railway Labor Act precluded or preempted plaintiff's claims.

III. *Subject Matter Jurisdiction*

On appeal the parties continue to frame the question as whether the district court had subject matter jurisdiction over Rabé's claims. That is not correct. As the parties agree, the protections of Title VII and the ADEA do not generally extend to aliens who work outside the United States. See 42 U.S.C. § 2000e-1(a); *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422 (D.C. Cir. 2005); 29 U.S.C. § 630(f); *Reyes-Gaona v. North Carolina Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001); *Denty v. SmithKline Beecham Corp.*, 109 F.3d 147, 150 (3d Cir. 1997); see generally *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 253-55 (1991) (discussing alien exemption). But that issue goes to the merits of a claim rather than the court's subject matter jurisdiction. An employee's status as a foreign worker may prevent her success on the merits in a Title VII or ADEA case, but it is not a barrier to the court's power to adjudicate her case.

The Supreme Court has held that the closely related question whether an employer has enough employees to be subject to Title VII is a matter for the merits rather than a requirement for subject matter jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006). The Court explained that, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516. We see no sound basis for distinguishing between the treatment of Title VII's 15-employee requirement and the requirements that an alien seeking relief under the employment discrimination statutes must

have performed her work within the United States. In both Title VII and the ADEA, the domestic-work requirement appears outside of the statute's jurisdictional provision. See 42 U.S.C. §§ 2000e-1 and 2000e-5(f)(3); 29 U.S.C. §§ 630(f) and § 626(c). There is no other reason to believe that Congress intended to "rank" the restrictions as jurisdictional. See *Arbaugh*, 546 U.S. at 516.[1]

Rabé alleged and supported with evidence substantial (*i.e.*, non-frivolous or colorable) claims for coverage directly under Title VII and the ADEA. Even if those claims are not successful on the merits because her work for the last several years of her employment was not in the United States, they were substantial enough to give the district court subject matter jurisdiction over the case, including supplemental jurisdiction over the state law claim. See, *e.g.*, *Greater Chicago Combine and Center, Inc. v. City of Chicago*, 431 F.3d 1065, 1070 (7th Cir. 2005) (affirming summary judgment on merits of federal constitutional claims that raised substantial federal questions); *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254, 1256 (7th Cir. 1994) (reversing dismissal for lack of subject matter jurisdiction where plaintiff

---

[1] The district court's treatment of the coverage issue as one of subject matter jurisdiction was consistent with the Supreme Court's approach in *EEOC v. Arabian American Oil Co.*, which affirmed a dismissal for lack of subject matter jurisdiction based on the plaintiff's foreign work location. See 499 U.S. at 259. That case did not carefully distinguish between the merits and subject matter jurisdiction, however. *Arbaugh* addressed the difference definitively, and it controls this issue.

alleged substantial federal claim); see generally *Lauritzen v. Larsen*, 345 U.S. 571, 574-75 (1953) (holding that federal court had subject matter jurisdiction to consider Jones Act claim by Danish seaman for injury occurring on board Danish-registered ship while in Cuban waters; defense that Danish law governed the claim was issue on merits, not a bar to subject matter jurisdiction).

IV. *The Merits and Choice of Employment Law*

Because United's motion was an attack on the merits of Rabé's claims rather than the district court's jurisdiction to hear her case, the court should have treated it as a motion to dismiss for failure to state a claim under Rule 12(b)(6). See *Miller v. Herman*, 600 F.3d 726, 732-33 (7th Cir. 2010). Before the district court, the parties spent most of their energy disputing whether Rabé spent enough time working in and traveling to the United States at relevant times to qualify as a person working in the United States for purposes of Title VII and the ADEA. United emphasized that Rabé had not worked flights to or from the United States for five years before her termination. Rabé emphasized that over the entire course of her employment with United, most of the flights she worked were to or from the United States. The choice of the relevant time period is debatable.

We do not disagree with the district court's conclusion that Rabé did not spend sufficient time working in the United States or traveling to and from the United States in the last several years before her termination to

qualify as being employed in the United States for pur-
poses of Title VII and the ADEA. We express no view as
to whether the fact that she worked on aircraft regis-
tered in the United States might be sufficient to apply
United States employment law. We conclude, however,
that the district court should have denied United's
motion to dismiss on the basis of Rabé's individual em-
ployment contract, which was attached to her com-
plaint. The contract specifies that "the terms and condi-
tions" of Rabé's employment would "be governed ex-
clusively by applicable United States law."

United concedes that the district court was free to
"apply the substantive law of Title VII, the ADEA,
[and] the IHRA." United insists, nevertheless, that Rabé
cannot prevail because those statutes are not "appli-
cable" to her, precisely because she is a non-citizen who
worked outside the United States. The argument proves
far too much. United demanded that the employment
relationship be governed exclusively by United States
law. Under United's theory, Rabé would not be pro-
tected by the employment discrimination laws of any
country. We understand the impulse to make an
explicit choice of law in a contract when the parties'
international relationship could result in prolonged
and expensive arguments about choice of law in the
event of a dispute. That is as true for employment
contracts as it is for sophisticated business-to-business
contracts. But we see no reason to interpret a contractual
choice-of-law provision as effectively excluding the
employee from the protection of public laws and

policies as fundamental as those embodied in employment discrimination laws.[2]

Instead, we view this case as more comparable to our decision in *Peters v. Gilead Sciences, Inc.*, 533 F.3d 594 (7th Cir. 2008). In *Peters*, we concluded that an employer could be held to a promise to extend to its employee the protection of an employment discrimination law (there, the Family and Medical Leave Act) even if the employee was not actually covered by the Act because of a statutory exception. *Id.* at 598-601. We left open the question whether the promise in that case

---

[2] Our approach is consistent with that of the Restatement (Second) of Conflict of Laws § 187(3) (1971), which teaches that when parties choose the law of a state to govern their contractual rights and duties, "[i]n the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law," meaning it does not include the chosen state's choice-of-law rules. To interpret such provisions as including the choice-of-law rules of the chosen state "would introduce the uncertainties of choice of law into the proceedings and would serve to defeat the basic objectives, namely those of certainty and predictability, which the choice-of-law provision was designed to achieve." *Id.*, comment (h). Courts have repeatedly rejected arguments similar to United's seeking to confuse application of contractual choice-of-law provisions by having them refer to the chosen state's choice-of-law rules. *E.g.*, *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1999); *Economu v. Borg-Warner Corp.*, 652 F. Supp. 1242, 1246-47 (D. Conn. 1987), *aff'd*, 829 F.2d 311 (2d Cir. 1987); *Hutcherson v. Sears Roebuck & Co.*, 793 N.E.2d 886, 890-91 (Ill. App. 2003); *McGill v. Hill*, 644 P.2d 680, 683 (Wash. App. 1982).

would be enforceable under contract law or the doctrine of promissory estoppel. *Id*. For our purposes in this case, however, the key point of the *Peters* decision is that an employer may agree by contract to extend statutory legal protections to an employee who might not be covered by the statute itself.

In this case, the international character of the parties' employment relationship could pose serious complications and uncertainties. Litigating the relevant employment location for employees who work in international transportation can be complicated and expensive, as shown by this case and others. See, *e.g.*, *Mithani v. Lehman Bros., Inc.*, 2002 WL 14359, at *1 (S.D.N.Y. Jan. 4, 2002) (Title VII did not apply to non-citizen who applied for position in London office of U.S. employer); *Hu v. Skadden, Arps, Slate, Meagher & Flom LLP*, 76 F. Supp. 2d 476, 477-78 (S.D.N.Y. 1999) (dismissing age discrimination suit brought by non-citizen after employer rejected his applications to work in the firm's Beijing and Hong Kong offices); *Gantchar v. United Airlines, Inc.*, 1995 WL 137053, at *10 (N.D. Ill. Mar. 28, 1995) (holding that non-citizen members of flight crews based in foreign country who spent only one-fifth of time working in United States territory were not covered by Title VII).

United chose to address these complications and uncertainties with a contract that required the employee to agree to be governed by United States law. Rabé agreed to the term, as reflected not only by her signature but also by the required handwritten note saying that she accepted the choice of United States law and the

choice of forum. The most reasonable interpretation of this employment agreement is that United agreed to application of the substance of United States law notwithstanding provisions that would otherwise point against its coverage because of Rabé's status as an alien and the changing locations of her work. Rabé has stated claims for relief sufficient to withstand United's motion to dismiss.[3]

As we explained above, the district court had subject matter jurisdiction under its federal question jurisdiction because plaintiff has asserted a colorable claim for coverage directly under the terms of the federal statutes, and on remand the court will have supplemental jurisdiction over the implicit state law claims for breach of contract and/or promissory estoppel. (We recognize that Rabé's complaints have not articulated breach of

---

[3] We refer to the substance of applicable law because not all of the procedures of Title VII and the ADEA could be required as a matter of contract law. In particular, the requirement that a complaining party exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission or a parallel state or local agency could not be imposed as a matter of contract. The parties could not require the EEOC or other agency to investigate a charge beyond the scope of its statutory authority. We also do not address here the possibility that another nation could find that an employment contract purporting to waive application of that nation's laws should not be enforced as a matter of public policy if the parties had a sufficient relationship with that nation.

contract and promissory estoppel theories. A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error. *E.g.*, *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003), following *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992).) Even without an attempt to assert a claim directly under the federal statutes, the district court would still have diversity jurisdiction in this particular case. Rabé herself identified diversity of citizenship as the basis for jurisdiction when she completed the civil cover sheet for her original complaint. See 28 U.S.C. § 1332(a)(2) (diversity jurisdiction available when amount in controversy exceeds $75,000 and case is between citizen of a state and a citizen of a foreign state). Under our reasoning, we should clarify, if an employment discrimination claim in a similar future case is based solely on the contract's agreement to be bound by United States law, subject matter jurisdiction would need to be based on diversity jurisdiction under 28 U.S.C. § 1332, and not federal question or civil rights jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## V.  *The Railway Labor Act*

Finally, we conclude that the Railway Labor Act is not an obstacle to Rabé's claims. The RLA provides, among other things, a mandatory and exclusive arbitral mechanism for "minor" disputes between air carriers and their employees. See *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248, 252-53 (1994). "Minor" disputes are those growing "out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or

working conditions." 45 U.S.C. § 151a; *Hawaiian Airlines*, 512 U.S. at 252-53; *Brown v. Illinois Central R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001). United argues that Rabé's claims fit that description because "they are founded upon United's alleged violation of the terms of the collective bargaining agreement that governed Rabé's employment." Def. Br. 28.

If that were an accurate description of Rabé's claims, we would agree that her claims are preempted, but it is not. She asserts rights that are independent of the collective bargaining agreement. They arise from her individual employment contract with United, which we have discussed above, and in which United and she agreed that their relationship should be governed by United States law, including, as we view it, federal employment discrimination laws.

RLA preemption might still apply if Rabé's claims could not be resolved without construing the collective bargaining agreement and therefore intruding into the RLA's federal mechanism for interpreting and enforcing collective bargaining agreements in the railroad and airline industries. See *Hughes v. United Air Lines, Inc.*, No. 10-1129, slip op. at 4-5 (7th Cir. Feb. 8, 2011) (explaining *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988)); see also *Hawaiian Airlines*, 512 U.S. at 262. But the mere mention of or reference to a collective bargaining agreement in the course of a lawsuit does not mean that the claim is preempted. Just because a lawsuit concerns an employment dispute or involves tangentially a provision of a collective bargaining agree-

ment does not mean that federal law preempts the state law claims. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (applying similar standard under section 301 of Labor Management Relations Act). A state law claim is preempted only when it asserts rights or obligations arising under a collective bargaining agreement or when its resolution is substantially dependent on the terms of the collective bargaining agreement. The mere need to consult a collective bargaining agreement does not require preemption. When a claim does not arise under a collective bargaining agreement, the claim is preempted only when its resolution depends on the disputed meaning of or requires interpretation of contract terms. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (also applying section 301).

The principal focus here is on United managers' subjective reasons for terminating Rabé's employment. Rabé alleges that she was treated differently than other employees who were similarly situated in terms of their use of company travel vouchers. Second Am. Cmplt. ¶ 24. Given the nature of Rabé's discrimination claims, their resolution does not appear likely to require the court to interpret the collective bargaining agreement "as a potentially dispositive matter." See *Brown*, 254 F.3d at 664 (holding that Americans with Disabilities Act claim was preempted by the RLA where plaintiff's claim "requires a potentially dispositive interpretation of the CBA's seniority provisions"). The collective bargaining agreement is relevant to Rabé's claims because she alleged that the travel-voucher policy was enforced against her in a discriminatory manner, but her claims

do not call the policy itself into dispute. See *Carmona v. Southwest Airlines Co.*, 536 F.3d 344, 349-50 (5th Cir. 2008) (reversing dismissal of flight attendant's claims of sex and disability discrimination; claims were not preempted where plaintiff did not challenge collective bargaining agreements or procedures, but alleged their discriminatory application); cf. *Brown*, 254 F.3d at 660-64. Accordingly, we conclude that Rabé's claims are not preempted or precluded by the RLA.

We REVERSE the judgment of the district court and REMAND for further proceedings on the merits of Rabé's Title VII, ADEA, and Illinois Human Rights Act claims, recharacterized as claims for breach of contract and/or promissory estoppel.