**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1680
_____

SCOTT STOUFFER, Individually and on
Behalf of All Others Similarly Situated,
                                              Appellant

v.

UNION RAILROAD COMPANY, LLC; TRANSTAR LLC;
UNITED STATES STEEL CORPORATION;
SMART TRANSPORTATION DIVISION
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:20-cv-00133)
District Judge: Honorable Robert J. Colville
_____

Argued January 23, 2023

Before: BIBAS, NYGAARD, and FUENTES, *Circuit Judges*

(Filed: October 26, 2023)

Mark A. Grace
Cohen & Grace
105 Braunlich Drive
Suite 300
Pittsburgh, PA 15237

Sammy Y. Sugiura [ARGUED]
Mooney Green Saindon Murphy & Welch
1920 L Street NW
Suite 400
Washington, DC 20036
        *Counsel for Appellant*

Courtney C. Brennan
Thomas M. Pohl [ARGUED]
Mary-Jo Rebelo
Burns White
48 26th Street
Burns White Center
Pittsburgh, PA 15222
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

Plaintiff-Appellant Scott Stouffer appeals from the dismissal of his complaint alleging age-based discrimination. We will affirm the District Court's order.

2

## FACTS AND PROCEDURAL HISTORY

Scott Stouffer alleges claims for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA") on behalf of himself and others similarly situated. As alleged in the operative complaint, Stouffer worked for Union Railroad Company, LLC ("Railroad") for over eight years until he was terminated at the age of 41.[1]

Stouffer alleges that, facing financial difficulty, the Railroad launched the "Carnegie Way" plan to promote cost-cutting measures. As part of this plan, the Railroad allegedly engaged in a scheme to discriminate against employees older than 40. The scheme involved targeting senior employees with sham workplace violations and forcing them to sign last chance agreements. Under a last chance agreement, an employee waives formal disciplinary proceedings in exchange for continued employment during a probationary period.

When Stouffer was 39 years old, he called a superior a "jagoff" under his breath.[2] The next week, Stouffer had a meeting with Railroad management and his union representative. He was told he could either sign a last chance agreement or go to a hearing and be fired. Feeling he had no

---

[1] The Defendant-Appellees are three separate entities: Union Railroad Company, LLC; United States Steel Corporation; and Transtar, LLC. Stouffer was an employee of Union Railroad Company. The parties dispute whether the other two entities can be liable as joint employers, but this Court need not decide that issue.

[2] Appx. 52 ¶ 85.

3

other choice, Stouffer signed a three-year last chance agreement. He was also assessed with 60 demerits for the incident. After this incident, Stouffer alleges that he was subject to micromanagement, surreptitious surveillance, the denial of meal periods and headlamp batteries, and shifts that were not properly staffed. He alleges that younger employees were not treated in a similar way.

In 2018, Stouffer was working on a train driven by a younger driver when the train ran through a switch. Stouffer was charged with multiple violations and immediately terminated. The younger driver—who Stouffer alleges was principally responsible for the incident—was given fewer demerits and was not terminated. When pressed for an explanation of this ostensible discrepancy, the Railroad cited Stouffer's last chance agreement. Stouffer was 41 when he was terminated.

Stouffer sued the Railroad for age discrimination under the ADEA on behalf of himself and others similarly situated.[3] The Railroad moved to dismiss the operative complaint. The District Court held that Stouffer had failed to allege facts supporting the existence of a scheme which could constitute a policy hiding age-based discrimination. It also held that Stouffer had not alleged any facts showing that the policy

---

[3] The initial complaint in this matter was filed by a plaintiff named Charles Marsh. Stouffer was the plaintiff on the first amended complaint. Appellees have forfeited the argument that this substitution was improper because their brief mentioned it only in passing, in a footnote, in an undeveloped sentence. *See Ethypharm S.A. Fr. v. Abbott Lab'ys*, 707 F.3d 223, 231 n.13 (3d Cir. 2013).

4

disparately impacted workers over the age of 40.  The District Court therefore granted the Railroad's motion to dismiss.  Stouffer appeals that decision.

## DISCUSSION

This Court's review is plenary where it assesses the subject matter jurisdiction of the federal courts and where it reviews a district court's decision granting a party's motion to dismiss.[4]  When examining subject matter jurisdiction, we may consider facts outside the pleadings.[5]

## A.

Before turning to the merits of Stouffer's claims, we must first address the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA").  Union employees at the Railroad are subject to a Collective Bargaining Agreement ("CBA"), which establishes the terms and conditions of their employment.  The RLA establishes arbitration boards which have exclusive jurisdiction to resolve disputes over the interpretation or application of CBAs in the railroad industry.  We therefore must determine whether Stouffer's claims are precluded by the RLA.[6]

---

[4] *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[5] *See Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997).

[6] We need not decide whether the RLA's mandatory arbitration provision is jurisdictional. Our sister circuits have gone opposite ways on this issue. *Compare Oakey v. U.S. Airways*

The RLA is intended to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes."[7] The RLA "establishes a mandatory arbitral mechanism for the prompt and orderly settlement of two classes of disputes"—major and minor.[8] Major disputes relate to the formation of CBAs and are not relevant to this case.[9] Minor disputes are those growing out of "the interpretation or application" of existing CBAs.[10] Minor disputes involve "controversies over the meaning of an existing [CBA] in a particular fact situation."[11] In other words, "major disputes seek to create contractual rights, minor disputes to enforce them."[12] This Court must determine whether Stouffer's claims constitute a minor dispute, in which case the RLA's arbitral mechanism applies.

---

*Pilots Disability Income Plan*, 723 F.3d 227, 237 (D.C. Cir. 2013) (holding that the RLA's arbitration provision is jurisdictional), *with Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 790 (6th Cir. 2012) (holding the opposite). "Instead, we assume without deciding that the provision is jurisdictional and address only whether preclusion applies here." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702 n.3 (4th Cir. 2023).

[7] *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 n.9 (1987)).

[8] *Norris*, 512 U.S. at 252 (internal quotation marks and citation omitted).

[9] *Id*.

[10] *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 303 (1989).

[11] *Norris*, 512 U.S. at 252 (quoting *Bhd. of R.R. Trainmen v. Chi. River & Ind. R.R. Co.*, 353 U.S. 30, 33 (1957)).

[12] *Id.* at 253 (quoting *Consol. Rail Corp.*, 491 U.S. at 302).

In *Hawaiian Airlines, Inc. v. Norris*, the Supreme Court held that a plaintiff's state law claim for wrongful discharge was not preempted by the RLA where the right existed independent of the CBA.[13] First, the Court explained that the CBA was not the "only source" of plaintiff's asserted "right not to be discharged wrongfully."[14] In contrast, minor disputes "involve duties and rights created or defined by the CBA."[15] The Court adopted a "contract-dependent standard," holding that "where the resolution of a state-law claim depends on an interpretation of the CBA, the claim is preempted."[16]

"Generally, the RLA will not bar a plaintiff from bringing a claim under an independent federal statute in court."[17] "But a federal claim that depends for its resolution on the interpretation of a CBA lacks independence from the CBA, and the RLA precludes it."[18]

So when does a federal claim depend on interpretation of a CBA? We agree with our sister circuits applying *Norris* that for the RLA to apply, the CBA must be more than "relevant" to a plaintiff's claim.[19] The "distinguishing feature"

---

[13] *Id*. at 266.

[14] *Id.* at 258.

[15] *Id.*

[16] *Id.* at 261–63.

[17] *Giles*, 59 F.4th at 702–03 (internal quotation marks and citation omitted).

[18] *Id*.

[19] *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 873 (7th Cir. 2011) (concluding that ADEA and other discrimination claims were not precluded by the RLA where a CBA was "relevant" to the plaintiff's claims, but her claims did "not call the policy

7

of a minor dispute is that it "may be conclusively resolved by interpreting the existing agreement."[20] And, "purely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a [CBA]."[21]

The Railroad argues that Stouffer's claims are precluded by the RLA because litigating his allegations of discrimination "may require both reference to and interpretation of the CBA."[22] The Railroad provides examples of how the CBA may be implicated: Stouffer alleges that he was subjected to discrimination by having to work shifts that were not properly staffed. In response, the Railroad points to sections of the CBA that address staffing work shifts, including one section that defines a "standard crew" as consisting of "a conductor and two brakemen," and another that places the decision of whether

---

itself into dispute"); *Giles*, 59 F.4th at 703 (holding that even where CBA provisions might be relevant, the "mere need to consult a [CBA] does not require preemption") (quoting *Rabe*, 636 F.3d at 873).

[20] *Consol. Rail Corp.*, 491 U.S. at 305; *Felt v. Atchison, Topeka & Santa Fe Ry. Co*., 60 F.3d 1416, 1420 (9th Cir. 1995) (explaining that the RLA does not preclude litigation where the merits of a litigant's federal claim cannot be "conclusively resolved merely by consulting the CBA"). As the Court explained in *Norris*, "to say that a minor dispute can be 'conclusively resolved' by interpreting the CBA is another way of saying that the dispute does not involve rights that exist independent of the CBA." *Norris*, 512 U.S. at 265.

[21] *Norris*, 512 U.S. at 261 (internal quotation marks and citation omitted).

[22] Appellee's Supp. Br. 4.

8

to have a second brakeman in the discretion of the railroad.[23] Stouffer also alleges that another worker was principally responsible for the incident that ultimately led to his termination. The Railroad argues that the CBA "may be relevant" to determining responsibility and defending against that allegation.[24]

Further, Stouffer's complaint alleges that the last chance agreements were intended only for substance abuse cases, but that instead, they were used to target senior employees. The Railroad argues that litigating this allegation will require "litigating the existence, scope, and terms of any collectively-bargained-for agreements" between the union and Railroad concerning "when and how" last chance agreements may be used.[25]

In evaluating the Railroad's arguments, a recent Fourth Circuit case is instructive. In *Giles v. National Railroad Passenger Corp.*, a plaintiff brought a federal discrimination claim, alleging that he "faced more severe discipline than a white employee who allegedly committed similar insubordinate behavior."[26] The employer argued that the

---

[23] *Id.* at 4–5

[24] *Id.* at 6.

[25] *Id.* at 8.

[26] *Giles*, 59 F.4th at 703. The Fourth Circuit recently held in a separate case that a plaintiff's Title VII claim was a minor dispute where the "thrust" of the claim was that her employer "deviated from its policies when dealing with her." *Polk v. Amtrak Nat'l R.R. Passenger Corp.*, 66 F.4th 500, 507 (4th Cir. 2023). In that case, the plaintiff relied on her interpretation of CBA provisions "as a stand-in for allegations about Amtrak's

plaintiff's theory of the case depended on an interpretation and application of the CBA which has specific provisions discussing performance issues and disciplinary procedures.[27] The Fourth Circuit explained that even where CBA provisions "might be relevant" to understanding how an employer defines and punishes insubordination, the "mere need to consult a collective bargaining agreement does not require preemption."[28]

The same is true here, and we agree with the District Court that Stouffer's claims are not precluded by the RLA. Looking first to the source of the asserted right, Stouffer's claims stem from a federal statute, not the CBA itself. Stouffer has not argued that any provision of the CBA is discriminatory, that the Railroad violated the CBA, or that the CBA was improperly applied to him. The Railroad's argument that interpretation of the CBA may be required falls short. It is not enough to point to sections of the CBA that may be relevant. Most of the Railroad's argument boils down to asserting that its actions were permitted by the CBA. But a claim is not barred simply because "the action challenged by the plaintiff is 'arguably justified' by the terms of the CBA."[29] Neither party has pointed to a provision of the CBA that they disagree on how to apply. Instead, we are asked to look at "purely factual

---

factual treatment of her similarly situated colleagues." *Id.* We agree with the Fourth Circuit that a federal claim can at times constitute a minor dispute, but that is not the case here.

[27] *Giles*, 59 F.4th at 703.

[28] *Id.* (quoting *Rabe*, 636 F.3d at 873).

[29] *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 833 (7th Cir. 2014) (quoting *Brown*, 254 F.3d at 668).

10

questions" about the employees' actions and the Railroad's conduct.[30]

Put simply, we do not need to interpret the CBA to resolve the merits of this case. Thus, even assuming that the RLA's arbitration provision is jurisdictional, the RLA does not preclude us from considering Stouffer's discrimination claim.

## B.

Having addressed the RLA, we turn to Stouffer's claim of age discrimination. Stouffer argues that the District Court erred in dismissing his disparate-impact claim under the ADEA.[31]

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[32] To establish a prima facie case of age discrimination based on disparate impact, a plaintiff must "(1) identify a specific, facially neutral policy, and (2) proffer statistical evidence that the policy caused a significant age-based disparity."[33]

---

[30] *Norris*, 512 U.S. at 261 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

[31] Stouffer has not argued that the District Court erred in dismissing Count I (unlawful disparate treatment under the ADEA). Thus, we do not address that claim.

[32] 29 U.S.C. § 623(a)(1).

[33] *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017).

11

Stouffer's complaint lacks the necessary factual allegations as to statistical disparities. Paragraph 121 of the complaint alleges that there was a "statistically significant" impact. This allegation is conclusory and properly discounted.[34] Nowhere in the complaint does Stouffer support that statement with factual allegations. The District Court therefore properly dismissed Stouffer's disparate-impact claim.

Stouffer also objects to the District Court's citation of cases that were decided at the summary judgment stage, arguing that the District Court misapplied the motion-to-dismiss standard. We disagree. The District Court articulated and applied the correct standard, even while looking to cases decided in a different procedural posture for guidance. Finally, the District Court did not abuse its discretion in dismissing the complaint with prejudice.[35] The complaint had already been amended twice, and Stouffer did not seek leave before the District Court to amend again.[36]

## CONCLUSION

For the foregoing reasons, we will affirm the decision of the District Court.

---

[34] *See Connelly v. Lane Constr. Corp*., 809 F.3d 780, 789 (3d Cir. 2016) ("*Twombly* and *Iqbal* distinguish between legal conclusions, which are discounted in the analysis, and allegations of historical fact . . . .").

[35] *Ramsgate Ct. Townhome Ass'n v. W. Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002) (reviewing for abuse of discretion).

[36] Appx. 14 n.3.