In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 21-3158
KRISTIE A. ALLEY,
 Plaintiff-Appellant,
 v.

PENGUIN RANDOM HOUSE,
 Defendant-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Southern District of Indiana, Indianapolis Division.
 No. 1:20-cv-00117-RLY-DLP — Richard L. Young, Judge;
 Doris L. Pryor, Magistrate Judge.
 ____________________

 ARGUED SEPTEMBER 12, 2022 — DECIDED MARCH 9, 2023
 ____________________

 Before EASTERBROOK, KIRSCH, and JACKSON-AKIWUMI, Cir-
cuit Judges.
 KIRSCH, Circuit Judge. Kristie Alley sued her former em-
ployer, Penguin Random House, for retaliation under Ti-
tle VII of the Civil Rights Act of 1964 and for breach of con-
tract under Indiana law. Alley alleged that Penguin demoted
her in retaliation for reporting sexual harassment and vio-
lated Indiana law in doing so. The Title VII claim proceeded
2 No. 21-3158

to summary judgment, but the record demonstrated that Al-
ley was demoted for her failure to report allegations as re-
quired by Penguin policy and, therefore, she did not engage
in statutorily protected activity. Accordingly, the court con-
cluded that no reasonable juror could find that Alley was re-
taliated against and granted Penguin’s motion for summary
judgment on that claim. Alley now appeals that ruling, as well
as the magistrate judge’s earlier dismissal of her state law
breach of contract claim under Federal Rule of Civil Proce-
dure 12(b)(6). We affirm both decisions.
 I
 Kristie Alley started working as a full-time order proces-
sor at Penguin Random House’s shipping warehouse in
Crawfordsville, Indiana in 2014. Within two years, Penguin
promoted Alley to the management position of Group
Leader. In that role, Alley monitored production and served
as a liaison between supervisors and line employees.
 Penguin required Group Leaders (and all managers and
supervisors) to report sexual harassment allegations when
they learned of them and provided clear instructions on how
to do so. The company’s Anti-Harassment and Reporting Pro-
cedure instructed employees who believed they themselves
or a coworker had been subject to harassment to promptly re-
port to: (1) their manager; (2) a department or division head;
or (3) a human resources representative. Alternatively, em-
ployees may report violations anonymously by contacting the
ombudsperson. Managers and supervisors were required to
communicate any employee complaint—formal or infor-
mal—to human resources and were subject to discipline for
failing to report suspected harassment. Alley received a copy
No. 21-3158 3

of this policy during her orientation and participated in train-
ings that referred to it.
 On September 13, 2019, Penguin employee Marlene Guz-
man informed Alley that Scott Lillard was sexually harassing
her. Despite her duty to follow Penguin’s reporting proce-
dure, Alley did not. Instead, she conducted her own inde-
pendent investigation into the allegations. Alley asked Guz-
man to provide a written statement detailing her allegations,
which Guzman gave her a few days later. Megan Haines,
Guzman’s then-coworker and roommate, submitted a corrob-
orating statement as well. Alley also messaged via Facebook
Ashley Pendleton, a former Penguin employee, to discuss her
experience with Lillard at the facility. Pendleton had stopped
showing up for work a few months prior, and Alley suspected
it had something to do with Lillard. Alley also made one
phone call to the ombudsperson, but no one answered. She
did not contact anyone in management or human resources
to report Guzman’s allegations.
 In the meantime, both Haines and another Penguin em-
ployee, Emily Felix, came forward to HR on their own, report-
ing that Lillard was sexually harassing Guzman. Penguin im-
mediately launched an investigation into the allegations.
Guzman submitted a statement detailing her harassment, and
Haines submitted a corroborating statement.
 Penguin’s senior vice president and the facility’s HR direc-
tor then met with Alley to learn if she had any further infor-
mation. Alley admitted that she already knew of Guzman’s
allegations and that she had reached out to Pendleton (the for-
mer employee) hoping to obtain more information about
Lillard. Following the meeting, Alley forwarded the state-
ments Guzman and Haines had provided to her.
4 No. 21-3158

 The next week, Alley provided a statement alleging that
she too had been sexually harassed by Lillard starting in 2015.
Cole Golladay, her former supervisor and Group Leader, later
revealed that Alley had reported the harassment to him in
2017, and that he did not report despite his obligation to do
so. Golladay was not disciplined for his failure to report.
 In light of this information, Penguin terminated Lillard in
late September 2019. Shortly after, Penguin’s senior vice pres-
ident and another manager met with Alley to inform her that
she was being demoted from Group Leader to forklift opera-
tor. They told her that the demotion was due to her failure to
report sexual harassment, thereby putting Penguin’s employ-
ees at risk. Alley continued working at Penguin as a forklift
operator until resigning in July 2020.
 II
 Alley appeals the district court’s grant of summary judg-
ment on her retaliation claim and dismissal of her breach of
contract claim. Under Rules 56 and 12(b), our review is de
novo. Scaife v. U.S. Dep’t of Vet. Aﬀairs, 49 F.4th 1109, 1114 (7th
Cir. 2022); Adams v. City of Indianapolis, 742 F.3d 720, 727–28
(7th Cir. 2014).
 A
 To survive summary judgment on a Title VII retaliation
claim, a plaintiﬀ must produce evidence from which a reason-
able juror could ﬁnd that: (1) she engaged in a statutorily pro-
tected activity; (2) she suﬀered an adverse employment ac-
tion; and (3) there is a causal link between the two. Abrego v.
Wilkie, 907 F.3d 1004, 1014 (7th Cir. 2018). “The key question
is whether a reasonable juror could conclude that there was a
causal link between the protected activity … and the adverse
No. 21-3158 5

action.” Rozumalski v. W.F. Baird & Assocs., Ltd., 937 F.3d 919,
924 (7th Cir. 2019) (citing Ortiz v. Werner Enters. Inc., 834 F.3d
760, 765–66 (7th Cir. 2016)). Relevant evidence may include
“suspicious timing, ambiguous statements of animus, evi-
dence other employees were treated diﬀerently, or evidence
the employer’s proﬀered reason for the adverse action was
pretextual.” Rozumalski, 937 F.3d at 924 (citation omitted). We
consider all of the evidence as a whole. Ortiz, 834 F.3d at 765.
 Alley alleges that Penguin demoted her in retaliation for
reporting sexual harassment. She argues that she helped Guz-
man report by encouraging her to put the allegations into
writing and to collect a corroborating statement from Haines.
According to Alley, she wanted to do this before taking the
allegations to Penguin so that the company would be forced
to investigate rather than cover them up. On appeal, she con-
tends that these actions were protected under Title VII and
that she was demoted because of them. Alley argues that: the
timing of her demotion was suspicious, Penguin’s reason for
demoting her was pretextual, the dissimilar treatment of Gol-
laday is proof that she was not actually demoted for failing to
report harassment, and edits made in her management jour-
nal are further support of Penguin’s disingenuousness.
 To satisfy the ﬁrst requirement of a retaliation claim, Alley
argues that the steps she took to help Guzman report her al-
legations are statutorily protected activity. But they are not.
“An employee engages in a protected activity by either: (1) ﬁl-
ing a charge, testifying, assisting or participating in any man-
ner in an investigation, proceeding or hearing under Title VII
or other employment statutes; or (2) opposing an unlawful
employment practice.” Northington v. H & M Int’l, 712 F.3d
1062, 1065 (7th Cir. 2013). Sexual harassment is indisputably
6 No. 21-3158

an unlawful employment practice and thus, reporting allega-
tions is a recognized protected activity under Title VII.
See e.g., Magyar v. Saint Joseph Reg’l Med. Ctr., 544 F.3d 766,
770–72 (7th Cir. 2008). But Alley did not actually report har-
assment; she failed to report harassment. Failing to report is
not a protected activity under Title VII. Whatever her motiva-
tion in undertaking her own investigation instead of taking
the report to HR, her conduct simply is not statutorily pro-
tected activity. Thus, Alley cannot satisfy the ﬁrst requirement
of a retaliation claim.
 It is undisputed that Alley never reported Guzman’s sex-
ual harassment allegations. Alley argues that she attempted
to report when she called the ombudsperson, but her call
went unanswered, and she never actually spoke with anyone.
She admits that she never made another attempt to call the
ombudsperson or to communicate the complaint to an HR
representative as required by the reporting policy. Penguin
management independently learned of the allegations and
asked Alley if she knew anything. Only then did Alley come
forward and admit that Guzman had reported these allega-
tions to her as well.
 We also note that even if Alley did engage in a protected
activity by attempting to help Guzman report, there is still in-
suﬃcient evidence to reasonably conclude that Penguin retal-
iated against her. Although suspicious timing “can sometimes
raise an inference of a causal connection” between an em-
ployee’s protected action and an adverse employment action,
there is nothing suspicious about the timing of Alley’s demo-
tion. Gracia v. SigmaTron Int’l, Inc., 842 F.3d 1010, 1021 (7th Cir.
2016). When “there are reasonable, non-suspicious explana-
tions for the timing” of the defendant’s conduct, proximity in
No. 21-3158 7

time is not enough to support a retaliation claim. Terry v. Gary
Cmty. Sch. Corp., 910 F.3d 1000, 1008 (7th Cir. 2018). Here,
there is a perfectly reasonable explanation for the timing of
Alley’s demotion: Penguin learned of her failure to comply
with her obligation to report sexual harassment allegations
and demoted her eight days later, after concluding its investi-
gation.
 Similarly, Alley failed to produce evidence of pretext.
A showing of pretext would require evidence suggesting that
Penguin lied about the real reason for Alley’s demotion. See
O’Leary v. Accretive Health Inc., 657 F.3d 625, 635 (7th Cir.
2011). But the evidence shows that Penguin took the allega-
tions against Lillard seriously and that it demoted Alley for
failing to report them. After learning of the allegations, Pen-
guin immediately launched an investigation, suspended
Lillard just a day later, and terminated him the week after
that.
 Alley argues that Penguin’s dissimilar treatment of Gol-
laday, who in 2017 failed to report Alley’s own allegations
against Lillard, casts doubt on Penguin’s motive. But a rea-
sonable fact ﬁnder could not conclude that Golladay is a sim-
ilarly situated employee. Similarly situated employees must
be “directly comparable to the plaintiﬀ in all material re-
spects.” McDaniel v. Progress Rail Locomotive, Inc., 940 F.3d 360,
368 (7th Cir. 2019) (cleaned up); see also Lesiv v. Illinois Cent.
R.R. Co., 39 F.4th 903, 919 (7th Cir. 2022) (“In a case challeng-
ing disciplinary action, the plaintiﬀ and comparator ordinar-
ily must have dealt with the same supervisor, been subject to
the same standards, and have engaged in similar conduct
without such diﬀerentiating or mitigating circumstances as
would distinguish their conduct or the employer’s treatment
8 No. 21-3158

of them.”) (cleaned up). Although Golladay also failed to re-
port harassment allegations—in this case, Alley’s—Penguin
did not learn of his failure until more than two years after the
fact. In contrast, Penguin was already investigating Guzman’s
allegations when it learned of Alley’s failure to report and was
able to take immediate action. The law does not require em-
ployers to discipline employees equally for behavior that hap-
pened multiple years apart. Penguin’s decision to treat the
two employees diﬀerently in this situation is not evidence of
a retaliatory motive.
 Lastly, Alley argues that summary judgment is precluded
because there is a disputed question of fact regarding changes
made to entries in her management journal. But any dispute
is immaterial. Even when asked about the relevancy of the
journal at oral argument, counsel could not give an answer
other than it was suspicious and that Penguin may have
changed it to try to build a record against her. We fail to see
how.
 The record shows that Alley was not demoted in retalia-
tion for reporting sexual harassment allegations, but for her
failure to report in a timely and appropriate manner. Thus, a
reasonable juror could not ﬁnd that her demotion was due to
her engagement in a protected activity. Her retaliation claim
fails.
 B
 We next turn to Alley’s state law breach of contract claim.
Indiana follows the employment at will doctrine, which gen-
erally permits both the employer and the employee to termi-
nate the employment at any time for any reason, or for no rea-
son at all. Meyers v. Meyers, 861 N.E.2d 704, 706 (Ind. 2007).
No. 21-3158 9

Employers may also demote employees as they see ﬁt. Never-
theless, Alley alleges that Penguin’s employee Code of Con-
duct created a unilateral contract containing binding mini-
mum standards that Penguin employees are obligated to ad-
here to and claims that Penguin can be held liable for failing
to adhere to those standards. Speciﬁcally, she alleges that Pen-
guin violated the handbook’s statement that “intimidation
and retaliation against employees who in good faith provide
reports of suspected or actual misconduct must not be toler-
ated.” Alley frames this as a speciﬁc promise and argues that
Penguin broke it by demoting her.
 This argument fails. First, for reasons discussed above,
Penguin did not retaliate against her for reporting sexual har-
assment. Second, Alley cannot recover because the Code of
Conduct is not an enforceable unilateral contract. A unilateral
contract arises when “one party makes an oﬀer (or promise)
which invites performance by another, and the performance
constitutes both acceptance of that oﬀer and consideration.”
Orr v. Westminister Vill. N. Inc., 689 N.E.2d 712, 719 n.11 (Ind.
1997). It is unclear whether an employee handbook could ever
constitute a unilateral contract and bind an employer under
Indiana law. See Peters v. Gilead Scis., Inc., 533 F.3d 594, 599
(7th Cir. 2008) (citing Orr, 689 N.E.2d at 719–20). Even if it
could, the handbook would have to contain a “promise clear
enough that an employee would reasonably believe that an
oﬀer had been made.” Orr, 689 N.E.2d at 720 (citation omit-
ted). Alley does not point to any provision in the handbook
that is a secure promise of employment. The provision she
cites is simply a personnel policy stating that certain behavior
is intolerable.
10 No. 21-3158

 Penguin’s employee Code of Conduct did not convert Al-
ley’s at will employment into a contractual relationship. Thus,
she cannot bring a claim for breach of contract.
 AFFIRMED
No. 21-3158 11

 JACKSON-AKIWUMI, Circuit Judge, dissenting. While I agree
with the majority opinion on the breach of contract claim, I
part ways with its evaluation of Alley’s eﬀort to report Guz-
man’s harassment allegation and Alley’s subsequent demo-
tion. There are suﬃcient material and disputed facts in the
record for Alley’s retaliation claim to go to a jury.
 The majority opinion concludes Alley’s retaliation claim
fails for two reasons: (1) Alley never reported Guzman’s alle-
gations; and (2) there is insufficient evidence to “reasonably
conclude” Penguin retaliated, particularly because Cole Gol-
laday, who failed to report Alley’s own allegation of harass-
ment two years prior and was not disciplined, is an improper
comparator. In my view, these objections misread the circum-
stances of the case.
A. Alley’s eﬀort to report
 I begin with undisputed facts of Alley’s effort to report
Lillard’s harassment. Alley was first told by Marlene Guzman
of Lillard’s harassment on September 13, 2019. Lillard was a
fellow group leader at the plant who, at the time, was working
alongside Alley in splitting the duties of a supervisor who
was on leave. Because of Guzman’s fears of continuing to
work under Lillard, and apparent indifference by manage-
ment to previous complaints about Lillard from six other
workers, 1 Guzman and Alley decided to make a report to the
ombudsperson as detailed in Section 4.4. of Penguin’s Code
of Conduct.

 1 Penguin contends that these previous complaints about Lillard were

focused on his management style and did not hint at sexual harassment
or gender-based bullying.
12 No. 21-3158

 On September 16 or 17, Alley received a written statement
from Guzman. On September 17, she called several numbers
listed in Penguin documents seeking to speak with the om-
budsperson. She eventually spoke for seven minutes with an
employee of Penguin who had trouble finding the appropri-
ate number. Alley then independently found the number for
the ombudsperson and left a message. Meanwhile, on Sep-
tember 18 and 19, another employee reported Lillard for har-
assing Guzman, and a roommate of Guzman submitted a cor-
roborating statement.
 On September 19 or 20, 2 Alley was called into a meeting
with two Human Resources managers, HR Director Bonnie
Mann and Senior Vice President Lori DeReza. Mann and De-
Reza asked Alley if there was anything wrong with her as she
had been acting unusually. In that meeting, Alley was the first
to disclose that she had received Guzman’s statement about
harassment by Lillard. Alley was subsequently demoted from
her group leader position in a meeting on September 27, os-
tensibly because she failed to report Lillard’s harassment.
Penguin’s anti-harassment policy requires managers to report
violations to HR, but also includes a procedure where em-
ployees can report to the ombudsperson.
 Alley’s theory of retaliation is that she was demoted for
disclosing to HR that Guzman was being harassed by Lillard.
A retaliation claim can survive summary judgment if the
plaintiff produces enough evidence for a reasonable jury to

 2 The record is unclear as to when this meeting happened. Alley said

it was September 20 in her complaint and deposition. However, in the
summary judgment and appeal briefs, Alley says it was September 19.
Penguin also says the meeting was September 19.
No. 21-3158 13

conclude (1) they engaged in protected activity; (2) defend-
ants took materially adverse action against them; and (3) there
was a but-for causal connection between the two. Nicholson v.
City of Peoria, 860 F.3d 520, 523 (7th Cir. 2017). Protected activ-
ity for the purposes of a Title VII retaliation claim is “some
step in opposition to a form of discrimination that the statute
prohibits.” Ferrill v. Oak Creek-Franklin Joint Sch. Dist., 860 F.3d
494, 501 (7th Cir. 2017) (citing O'Leary v. Accretive Health, Inc.,
657 F.3d 625, 631 (7th Cir. 2011)). This only requires an em-
ployee to have a “good-faith and reasonable belief” that they
are opposing unlawful conduct. Id. (emphasis in original). Al-
ley’s behavior meets this standard: she listened to Guzman,
agreed with her desire to report to the ombudsperson, took a
statement from her, and made an honest attempt to contact
the ombudsperson. She then told HR about Guzman’s state-
ment at the meeting on September 19 or 20. These are enough
facts for a reasonable jury to conclude that Alley engaged in
protected activity for the purposes of her retaliation claim.
B. Evidence of retaliation
 This takes us to the question of whether Alley presented
evidence of a “but-for” causal connection between her report
and her demotion. Alley can meet this standard using circum-
stantial evidence such as “suspicious timing, ambiguous
statements of animus, evidence other employees were treated
differently, or evidence the employer’s proffered reason for
the adverse action was pretextual.” Rozumalski v. W.F. Baird &
Assocs., Ltd., 937 F.3d 919, 924 (7th Cir. 2019) (citing Greengrass
v. Int’l Monetary Sys. Ltd., 776 F.3d 481, 486 (7th Cir. 2015)).
14 No. 21-3158

 1. Penguin’s treatment of Golladay
 Alley contends that retaliation against her is evidenced in
part by the treatment of Golladay, who received her report
about Lillard’s sexual harassment in 2017 but did not follow
up on the report and yet was not disciplined by Penguin. (The
record suggests that Penguin did not even investigate Gol-
laday’s failure to report.) Indeed, Golladay did not report the
harassment upwards until two years later, on September 25,
2019, in an email to his manager, Mike Brock. This is several
days after Alley attempted to call the ombudsperson about
Lillard’s harassment of Guzman, after two other employees
reported the same, and after Alley’s meeting with HR during
which she also reported the same.
 Penguin—and the majority opinion—view Golladay’s
conduct as irrelevant because Penguin did not discover Gol-
laday’s failure to report until two years after the fact. The ma-
jority opinion concludes that this time gap justified Penguin’s
different treatment of Alley and Golladay. This supposition
not only fails to view the facts in the light most favorable to
Alley as the non-moving party, it also assumes that Alley’s
comparison to Golladay is an attempt to use the McDonnell
Douglas burden shifting framework.3 However, Alley is

 3 Even if Alley was proceeding under the McDonnell Douglas frame-

work, we have reminded that comparisons between employees may not
be drawn too narrowly. See Dunlevy v. Langfelder, 52 F.4th 349, 354 (7th Cir.
2022) (“If a comparator engaged in equivalent or more egregious conduct
than the plaintiff but received a lighter punishment, or none at all, that
satisfies the inquiry. The parties agree that [the compared employees] had
the same supervisor and were subject to the same standards. Thus, the
only question is whether the two men’s conduct was of ‘comparable seri-
ousness,’ i.e., did they engage in ‘similar—not identical—conduct to qual-
ify as similarly situated.’”). Likewise, where disciplinary actions are
No. 21-3158 15

proceeding under the Ortiz framework and referencing Gol-
laday as circumstantial evidence to show causation. See Ortiz
v. Werner Enters., Inc., 834 F. 3d 760, 766 (7th Cir. 2016) (hold-
ing “all evidence belongs in a single pile and must be evalu-
ated as a whole.”); Runkel v. City of Springfield, 51 F.4th 736,
742 (7th Cir. 2022) (“[O]ur decision in Ortiz v. Werner Enter-
prises rejected the distinction between direct and indirect evi-
dence and the corresponding methods of proof … . [W]e and
district courts should consider all available evidence and,
when deciding a motion for summary judgment, should ask
whether a reasonable jury could find that the relevant deci-
sion was motivated in part by an unlawful criterion.”); see also
Rozumalski, 937 F.3d at 924 (holding “evidence other employ-
ees were treated differently” can be used to show a causal link
for a retaliation claim).
 The fact that Penguin chose to demote Alley but let Gol-
laday escape any form of discipline (and perhaps even inves-
tigation) is particularly noteworthy given the difference in the
level of egregiousness. Alley’s purported delay in reporting
to HR was mere days; Golladay took over two years and
waited until after the secret of Lillard’s harassment was out of
the bag and the company’s internal processes had begun. The
majority opinion places substantial weight on Penguin’s ex-
planation that Golladay’s infraction was stale, making it less
urgent to act upon than Alley’s. However, a jury is entitled to
read such an explanation as an ex-post justification for Alley’s

challenged, such as in a case the majority opinion references, see supra 7-8
(citing Lesiv v. Illinois Cent. R.R. Co., 39 F.4th 903 (7th Cir. 2022)), we have
stated that the “congruence” between the conduct of both employees
“need not be perfect.” Lesiv, 39 F.4th at 919.
16 No. 21-3158

demotion. An employer “who advances a fishy reason [for
adverse action] takes the risk that disbelief of the reason will
support an inference that it is a pretext for discrimination.”
Loudermilk v. Best Pallet Co., LLC, 636 F.3d 312, 315 (7th Cir.
2011).
 To be sure, evidence that other employees reported
Lillard’s harassment and did not receive discipline cuts
against Alley. But this merely shows that there is competing
evidence a jury must evaluate, not that the record compels a
ruling as a matter of law against Alley. Flowers v. Renfro, 46
F.4th 631, 636 (7th Cir. 2022) (“At summary judgment, the dis-
trict court could not weigh credibility, balance the relative
weight of conflicting evidence, choose between competing in-
ferences, or resolve swearing contests. It had one task only—
to determine whether there were any disputes of material fact
that required a trial and upon which a reasonable jury might
rely to return a verdict for the nonmoving party.”).
 2. Penguin’s changes to Alley’s employment record
 In addition to Golladay as a comparator suggesting retali-
ation, Alley has presented evidence of changes made to her
management journal. Two days after her September 27 demo-
tion, Alley checked her management journal and saw that her
work performance ratings for March 4, August 19, and Au-
gust 23 had changed from “N”—for “neutral”—to “B”—for
“bad.” The explanations from Penguin’s management as to
how and why these changes were made are confusing and
contradictory.
 HR Director Bonnie Mann testified that she spoke with
Mike Brock, who managed Alley at the time and authored the
August 19 entry. According to Mann, Brock told her that “he
No. 21-3158 17

might have put N for not good versus B for bad or vice versa.”
Mann then testified that “[Brock] noticed that [Zach Link, an-
other superior] had done the same thing … . And then [Brock]
brought it to [Link’s] attention. And [Link] went in and up-
dated it and made the correction.” Link, however, testified
that he never made any changes to Alley’s journal entries, nor
was he ever contacted to make such changes.
 These explanations from management are inconsistent.
The majority opinion dismisses the issue by calling the dis-
pute “immaterial.” In doing so, it notes that counsel for Alley
at oral argument was only able to state that the changed rec-
ords were suspicious because they suggested Penguin was
trying to build a record against Alley. But poorly substanti-
ated and explained downward changes to an employee’s rat-
ings after the employee engages in protected activity are ex-
actly the kind of circumstantial evidence a plaintiff is allowed
to rely on to show a causal link for a retaliation claim. Rozu-
malski, 937 F.3d at 924.
 3. Penguin’s justiﬁcation for demoting Alley
 A final piece of evidence worth discussing is Penguin’s
justification for demoting Alley: that she failed to report har-
assment. Alley has presented sufficient evidence to raise a
jury question about whether this reason is pretextual because
a reasonable jury could conclude her actions did not consti-
tute a “failure” to report in the first place.
 Alley has presented evidence of working with Guzman to
make a report to the ombudsperson, which Penguin’s anti-
harassment procedure specifically contemplates. Alley heard
from Guzman on September 13, and attempted to report to
the ombudsperson on September 17. Just two or three days
18 No. 21-3158

later, Alley disclosed Guzman’s allegations to HR managers
Mann and DeReza and detailed the work she had done to help
Guzman file her complaint. In short, there are disputed mate-
rial facts about the nature of Alley’s activity (failure to report
versus an attempt to report to the ombudsperson and an ac-
tual report to HR) that preclude summary judgment. Dunn v.
Menard, Inc., 880 F.3d 899, 905 (7th Cir. 2018) (“A genuine dis-
pute of material fact exists if ‘the evidence is such that a rea-
sonable jury could return a verdict for the nonmoving
party.’”).
 For these reasons, I respectfully dissent in part.